PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DAVID SORBO,

       Plaintiff-Appellant,

  v.

UNITED PARCEL SERVICE,

       Defendant-Appellee.

Nos. 03-1455, 04-1251 & 05-1016

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## (D.C. No. 01-B-1708 (MJW))

---

Submitted on the briefs:

David A. Sorbo, Pro Se, Appellant.

Elizabeth A. Phelan, Judith A. Biggs, Holland & Hart LLP, Boulder, Colorado, for Defendant-Appellee.

Steven M. Gutierrez, Holland & Hart LLP, Denver, Colorado, for Defendant-Appellee.

---

Before **LUCERO** , **ANDERSON** , and **BRORBY** , Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Plaintiff David Sorbo, a white male, filed suit against United Parcel Service (UPS), alleging age discrimination, reverse race and sex discrimination, hostile work environment, retaliation, and breach of contract/covenant of good faith and fair dealing in connection with his termination following complaints about his behavior from female employees of a UPS customer. [1] In a thorough order, the district court held that plaintiff had not demonstrated a triable issue of fact as to any of his claims and, accordingly, granted summary judgment for UPS. Plaintiff seeks review of that order in appeal No. 03-1455. A dispute over costs ensued and, ultimately, the court awarded UPS $52,461.87 under Rule 54(d)(1). [2] Plaintiff challenges that award in appeal No. 04-1251. Finally, plaintiff sought relief from judgment under Rule 60(b), which the district court denied. Plaintiff seeks review of that ruling in appeal No. 05-1016. The three appeals were consolidated for procedural purposes. [3] We address them in sequential order, determined by substance rather than chronology: the grant of summary judgment, followed by the denial of Rule 60(b) relief, and, finally, the award of costs.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

[2] All references to Rules herein are to the Federal Rules of Civil Procedure.

[3] A fourth appeal (No. 04-1015), listed on the briefing submitted with respect to appeal No. 03-1455, was dismissed for lack of jurisdiction on November 23, 2004.

-2-

## I. Summary Judgment

### A. Factual Background

A short summary of the basic facts should suffice as an introduction to the various issues raised on appeal from the grant of summary judgment. This summary is not intended to be exhaustive, and additional facts will be discussed where relevant later.

After some ten years with UPS, plaintiff became an account executive in the business development department in 1991, selling company services to new and existing customers. During the ensuing years, different supervisors voiced or related concerns about his relations with company personnel and customers. In October 1999, Monica Harlan, his direct supervisor, raised performance issues that resulted in his being placed on probation for three months by Harlan and UPS district sales manager Jack Donnell. Plaintiff signed an action plan stating that he "fully underst[ood] that one single concern about his follow-up skills, his work ethic, his arrogance, or his full commitment to change his behavior or attitude will result in further discussion with all involved which could lead up to and include his termination from UPS." R. vol. I, doc. 93, ex. A-14.

Shortly after plaintiff's probation expired, two female employees of UPS customer Employee Information Services (EIS) contacted his then-supervisor, Jesse Gallegos, with serious complaints about plaintiff's professional conduct and

personal behavior that led to EIS cancelling its account. The former complaints involved repeated gross tardiness and unresponsiveness to customer concerns; the latter included a sexist joke and inappropriate comments of a sexual nature. *Id.*, ex. A-17. When Gallegos told plaintiff about the EIS employees' complaint, he responded by claiming that they had sexually harassed him. *Id.*, ex. A-1, at 183. Plaintiff did not, however, complete a written account of this claim, as requested by Gallegos. *Id.*, ex A-1, at 187-91.

Gallegos, Donnell, and Kevin Starbuck, a UPS human resources manager, interviewed the EIS employees, who reiterated and expanded on their complaints. *Id.*, ex. A-19. They detailed their complaints more formally in follow-up communications by letter and email, which also expressed shock at plaintiff's (emphatically denied) counter-accusations. *See id.*, exs. A-20, A-21. Based on these circumstances, plaintiff was terminated, with UPS district manager Myron Gray making the final decision. *See id.*, ex. A-3, at 3 and ex. A-22, at 95.

**B. District Court's Disposition**

A summary of the district court's disposition of plaintiff's various claims is necessary to frame our analysis of the issues on appeal. With regard to plaintiff's hostile work environment claim, the district court addressed the instances of allegedly hostile conduct directed at plaintiff by his UPS superiors (Harlan, Gallegos, Donnell, and Gray), and by the two EIS employees whose complaints

-4-

prompted his termination.  After considering these in detail, separately and collectively, the court concluded that plaintiff could not show actionable conduct severe or pervasive enough to give rise to the type of abusive environment necessary for a hostile-environment claim.  R. vol. II, doc. 201, at 6-11 (applying *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

The district court then disposed of the discrimination claims, holding that plaintiff had failed to demonstrate a prima facie case of either age, sex, or race discrimination and that, in any event, UPS had conclusively shown a legitimate business reason for his termination.  Plaintiff's discrimination claims failed in the first instance because his comparisons to the treatment of younger, female, and/or non-white employees did not raise any inference of discrimination in light of the fact that these other employees were not shown to be truly similarly situated.  Even if this deficiency in his case were ignored, however, plaintiff's misconduct and unsatisfactory performance provided a legitimate reason for termination that he failed to discredit as mere pretext for discrimination.

The district court rejected plaintiff's retaliation claim for failure to show any pertinent protected activity upon which such a claim could be premised.  As with the discrimination claims, the court also held that plaintiff had, in any event, failed to create a triable issue regarding the pretextuality of the otherwise plainly legitimate grounds stated by UPS for his termination.

Finally, the district court determined that plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing were deficient for reasons of controlling state law. Plaintiff has not raised any issues on appeal with respect to these claims, however, and we therefore do not address them further. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1140 (10th Cir. 2003).

Before proceeding to the issues presented by this appeal, there is a legal point that should be clarified. The district court recited an older version of the prima facie case for discrimination which has limited, if indeed any, remaining application in this circuit. The version it recited (initially in reference to the age claim) required plaintiff to "show that (1) he belongs to the protected age group; (2) his job performance was satisfactory; (3) adverse employment action was taken against him; and (4) comparable employees who were not in a protected class did not receive comparable adverse employment action." R. vol. II, doc. 201, at 12 (following *Thomas v. IBM*, 48 F.3d 478, 484-85 (10th Cir. 1995)). In reference to the fourth prong of the test, the Supreme Court has specifically held that age-discrimination plaintiffs need not show disparate treatment as compared to co-workers *outside the protected class* (i.e., those not over forty years of age). *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996). In

*Perry v. Woodward*, 199 F.3d 1126, 1135-40 (10th Cir. 1999), this court extended the same basic point to other forms of alleged discrimination.[4]

Indeed, numerous decisions of this court indicate that a prima facie case may not require a "similarly-situated person" comparison at all. In particular, several cases involving adverse action prompted by unsatisfactory performance or misconduct have framed the relevant element much more broadly, as requiring a showing of "circumstances giving rise to an inference of discrimination." *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004); *see Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005); *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002); *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). While this broader requirement may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably, such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case. *See Plotke*, 405 F.3d at 1101; *Hysten*, 296 F.3d at 1181; *Jones*, 203 F.3d at 753.[5]

---

[4]    As noted in *Jaramillo v. Colorado Judicial Department*, 427 F.3d 1303, 1307 n.1 (10th Cir. 2005), this court's own jurisprudence has not been entirely consistent in this regard. *See, e.g.*, *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005) (citing pre-*O'Connor* decisions for requirement that plaintiff show different treatment of "non-protected employees").

[5]    We acknowledge some additional tension in our case law here. While the above cases treat circumstances suggestive of discrimination as an element of the

(continued...)

That said, we do not think that the district court's recitation of an outmoded prima facie case test in itself warrants reversal. The parties have not noticed the point, much less offered any challenge to or defense of the district court's formulation. More importantly, however the test is framed in the abstract, where, as here, comparison to others similarly situated is "the method chosen by [the plaintiff]" to raise an inference of discrimination, the claim is properly analyzed in those terms. *Jones*, 203 F.3d at 753. And, whether that analysis is conducted in reference to the prima facie case or the business justification versus pretext inquiry, *see supra* note 5, if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result.

## C. Issues Raised on Appeal

Much of plaintiff's briefing relates directly or indirectly to his objection that UPS advanced inconsistent positions as to who was the decision-maker for his termination, naming sales manager Jack Donnell in discovery proceedings, but

[5](...continued)
prima facie case, other cases truncate the prima facie case to require only the basic showing that the plaintiff was qualified for his job and treat the surrounding circumstances – including alleged misconduct of the plaintiff – as part of the analytically subsequent inquiry into the employer's stated basis for the adverse action and the plaintiff's opposing demonstration of pretext. *See Green v. New Mexico*, 420 F.3d 1189, 1192, 1194 (10th Cir. 2005) (following *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000)). For reasons given in the text above, we need not resolve this apparent conflict here.

then citing district director Myron Gray during summary judgment proceedings. The adverse result of this change in position, plaintiff insists, is that he was unable to obtain materials in discovery later needed to oppose summary judgment. Before addressing the legal issues this argument raises, it is important to clarify the procedural facts surrounding UPS's litigation conduct and plaintiff's response thereto.

In his first set of interrogatories plaintiff asked UPS to identify all account executives disciplined from 1995 to the present. UPS raised various objections, but "[w]ithout waiving these objections, UPS provide[d] general information on the sex, race and age of Account Executive (AE) employees who were terminated or disciplined for performance reasons, from 1998-2001 (the period during Plaintiff's employment when Jack Donnell headed up the Business Development group) (Exhibit A hereto)." R. vol. 1, doc. 33, attachment at 3. In a motion to compel discovery (addressed to much more than this single item), plaintiff argued that UPS had "provided incomplete and partial information," though not because of any undue significance attributed to Donnell's involvement. Rather, plaintiff insisted he was entitled to "documents dating to 1995" because UPS had relied on such documents "in justifying [his] termination, therefore the time frame in this interrogatory is reasonable in time and scope." *Id.*, doc. 33 at 6. However, in reiterating the explanation for limiting UPS's answer to 1998-2001, UPS counsel

interjected that Donnell was "the decision maker for [plaintiff's] termination." *Id.*, doc. 46, at 2. The magistrate judge denied the motion to compel in a minute order "for those reasons as stated in Defendant UPS's response," holding "UPS has fully responded to the discovery requests." *Id.*, doc. 53, at 2. Plaintiff did not seek district court review of that order pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(a).

As plaintiff notes, when UPS later moved for summary judgment, it identified Gray as the person who decided on plaintiff's termination. It is this change in focus that plaintiff now argues put him in an evidentiary bind, because his discovery had been limited (per UPS's successful opposition to his motion to compel) based on the mistaken premise that Donnell had been the decision-maker with respect to his termination.

Plaintiff does not mention, however, that months before UPS moved for summary judgment, it had corrected counsel's misidentification of Donnell as the decision-maker. In response to a second set of interrogatories, UPS clarified that the decision to terminate was made by Gray and UPS managers Tim Sullivan and Kevin Starbuck – a point recognized by plaintiff in his response in opposition to summary judgment. *See* R. vol. III, doc. 108, at 2. While thus aware that UPS had provided a sworn response to his second set of interrogatories contrary to the statement made by UPS counsel in opposing his prior motion to compel, plaintiff

nevertheless did not argue to the district court that he had been improperly denied relevant discovery, nor did he oppose summary judgment under Rule 56(f) on the ground that he needed additional discovery in order to respond adequately to the motion.

## 1. Denial of Discovery

Plaintiff appears to raise two distinct, albeit related, objections regarding the belated identification of district director Gray as the person ultimately responsible for his termination: that the magistrate judge improperly limited discovery, denying his motion to compel, based at least in part on the subsequently retracted designation of sales manager Donnell as the responsible decision-maker; and that the district court improperly granted summary judgment for UPS, penalizing plaintiff for the discovery disability inappropriately imposed on him. Neither of these points was raised in the proceedings leading to summary judgment, however, and we decline to upset that determination on the basis of a belated attack.

After receiving UPS's response to his second set of interrogatories, plaintiff could have asked the magistrate judge to reconsider prior discovery rulings potentially affected by the identification of the final decision-maker; indeed, he could have simply served follow-up discovery requests on UPS based on the new information. He did not pursue either course (and we note that he was

-11-

proceeding with counsel by this time).  Nor, as noted above, did he raise any objection regarding the denial of discovery or the need for additional discovery to the district court in conjunction with his opposition to summary judgment.  Thus, plaintiff "never raised [his current objections regarding UPS's identification of the decision-maker] below, despite ample opportunity to do so," and we therefore do not reach them.  *Scheidt v. Klein*, 956 F.2d 963, 970 (10th Cir. 1992);  *see, e.g.*, *Quigley v. Rosenthal*, 327 F.3d 1044, 1069 (10th Cir. 2003),  *cert. denied*, 540 U.S. 1229 (2004);  *Boyd Motors, Inc. v. Employers Ins. of Wausau*, 880 F.2d 270, 271 (10th Cir. 1989).

## 2.  Dispute Regarding Identity of Decision-Maker

Plaintiff argues that the district court's analysis of his claims was tainted by its failure to recognize that Gray's role as the decision-maker was disputed. While this sounds like a distinct factual argument, it is actually just a variation on plaintiff's complaint about discovery.  Plaintiff again invokes the inconsistency between UPS counsel's initial reference to Donnell as the decision-maker and UPS's subsequent verified clarification of the matter in its response to the second set of interrogatories as the basis for claiming that the decision-maker's identity was the subject of a genuine dispute precluding summary judgment.  *See* Aplt. Opening Br. at 5.  While a party may be able to defeat summary judgment on the basis of a fact dispute created by an unexplained contradiction in the movant's

-12-

own sworn statements, that is not what we have here. As previously explained, the "contradiction" involved here is simply UPS's correction of a misstatement by counsel – and statements of counsel, which "are not summary judgment evidence," *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992); *see also Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 496-97 (10th Cir. 1992), cannot create an evidentiary dispute.

**3. Inconsistent Positions taken on Plaintiff's Probationary Status**

Plaintiff complains, in more summary fashion, about another discovery matter that mirrors in significant respects the flap over mis-identification of the decision-maker. He notes that in the proceedings over his motion to compel discovery involving his first set of interrogatories, UPS indicated he had been on probation when he was terminated, but in subsequent discovery and in connection with summary judgment, acknowledged he was no longer on probation at the time. He insists that "[t]he contradictory argument by UPS in the two motions demonstrates pretext and discredits argument of fair treatment by UPS. The genuine issue of fact also demonstrates that UPS subjected Plaintiff to abusive, disparate and discriminatory treatment." Aplt. Opening Br. at 6. This line of argument is facially specious, for many of the reasons stated in connection with plaintiff's other discovery objection. The pertinent facts undermine it further.

UPS objected to plaintiff's interrogatory seeking information regarding termination or discipline of other account executives for performance reasons on the ground that plaintiff had been involved in conduct unique to him (sexual harassment of a customer) and thus was not fairly comparable to other account executives who may have had performance issues. *See* R. vol. I, doc. 46, at 2. Nevertheless, as noted previously, UPS provided the information (reserving its objection) concerning account executives " *because* Plaintiff was *on probation* at the time of his termination *for performance reasons* ." *Id.* (emphasis added). In short, UPS's initial misunderstanding about plaintiff's probationary status at the time of his termination prompted it to provide, not withhold, the requested discovery. And, when it came to summary judgment, acknowledging that plaintiff was not on probation when he was terminated would appear to have been more of a concession than a self-serving change in position.

### 4. Accusations of Perjury Regarding UPS's Investigation of Plaintiff's Complaint of Harassment by EIS Employees

Plaintiff's final objection to the summary judgment order is that, with respect to his allegation that UPS did not adequately investigate *his* harassment claim against the EIS employees whose complaints prompted his termination, "[s]everal key witnesses of UPS have provided information that is potentially perjuri[ous] in nature" and the district court "failed to consider this evidence." Aplt. Opening Br. at 6. In his opening brief, the only factual matter identified in

-14-

this regard concerns plaintiff's assertion that he was out of state at the time UPS witnesses claim that he was interviewed about the relevant events. *See id.* He does not, however, contend that he never in fact spoke with the UPS witnesses, just that they misidentified the particular date of the communication. *See id.* In short, though he insists the alleged "potentially perjurious" evidence "bears witness that there was [a] genuine issue of fact," he presents no argument for the *materiality* of the issue to which he alludes. *Id.* Without such an argument, he has failed to raise an issue that undermines the grant of summary judgment. *See Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001) (noting case "teem[ed] with genuine factual disputes," and emphasizing that "[t]o avert summary, however, the contested facts must be *material*").

In his reply brief, plaintiff also references allegedly false testimony from the chief complaining EIS employee and two other UPS witnesses, which he brought to the district court's attention by way of a Rule 60(b) motion filed after this appeal was taken. *See* Aplt. Reply Br. at 14. The proper context for consideration of this allegation is in connection with plaintiff's separate appeal (No. 05-1016) from the denial of that motion, which is taken up below.

In sum, plaintiff has failed to demonstrate the existence of any reversible error with respect to the entry of summary judgment for UPS. We therefore affirm the district court's ruling under review in appeal No. 03-1455.

## II. Rule 60(b) Ruling

Plaintiff filed a motion for relief from judgment under Rule 60(b) on the last day of the period specified as the outside limit for seeking relief under three of the four subsections he invoked. *Id.* ("The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken."). Plaintiff later filed an amended Rule 60(b) motion, well beyond the one-year limit. The district court summarily denied the latter as untimely, holding that plaintiff's attempt to invoke the principle of retroactive amendment in Rule 15, which applies to pleadings, was inapposite. Addressing the initial motion, the court held that while it was not barred as a general matter by the strict one-year limit, plaintiff's objections based on information available prior to the grant of summary judgment were not "made within a reasonable time" and, thus, were time-barred under this more flexible limitation. As for one matter based on evidence newly discovered shortly before the motion was filed, the court held it was not time-barred but lacked merit. We review the court's ruling under Rule 60(b) for an abuse of discretion. *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005). Finding no abuse of discretion, we affirm.

-16-

We know of no authority suggesting that the district court was required to accept plaintiff's belated amended Rule 60(b) motion. [6] On the contrary, the rules appear to dictate precisely the result reached here. Pleadings are categorically distinguished from motions, *see* Rule 7(a) & (b), and the provisions of Rule 15 regarding amendments and their relation-back apply only to pleadings. *See also Schwartz v. United States,* 733 F. Supp. 235, 235 n.1 (D. Md. 1990) (holding Rule 15(a) inapplicable to amended motion to vacate judgment because original motion did "not fall within the Rule 7(a) definition of pleadings subject to the Rule 15 liberal amendment provisions"), *aff'd*, 976 F.2d 213 (4th Cir. 1992). Indeed, to disregard the limited scope of Rule 15 and allow use of its amendment and relation-back provisions to permit a belated motion under Rule 60(b) would violate the unqualified directive in Rule 6 that the court "may not extend the time for taking any action under Rule[] . . . 60(b), except to the extent and under the conditions stated [there]in." The district court certainly did not abuse its discretion by proceeding in a manner consistent with the governing rules.

---

[6] Moreover, plaintiff concedes that his amended motion did not present new substantively distinct grounds for relief. *See* Aplt. Opening Br. at 13-14. Not only does this undercut considerations of prejudice generally (since any factual or legal argument involved could always be presented by other appropriate means), it specifically negates concern about possible Rule 60 claims neither time-barred nor otherwise accounted for by the district court's analysis of the original motion.

-17-

Turning to the original motion, the district court noted that plaintiff's objections regarding allegedly inconsistent statements from UPS employees and assertedly incredible statements from EIS employees plainly involved matters that could have been raised in the summary judgment proceedings concluded nearly a year before. Accordingly, the district court held that these objections had not been "made within a reasonable time," as required by Rule 60(b), relying on circuit decisions clarifying that motions filed within the one-year limitation may still be barred under the reasonable-time limitation, depending on relevant circumstances. [7] *See, e.g.*, *Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 954 (10th Cir. 2004) (following *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990)). In particular, the court noted that plaintiff had not given "sufficient justification for the delay," as required by our cases. *See id.* at 955 (following *White*, 915 F.2d at 1425). Indeed, we have reviewed plaintiff's Rule 60 motion, as well as the amended motion he later proffered, and neither endeavors to offer *any* justification for the delay. *See* R. supp. vol. VII, doc. 259; *id.*, supp. vol. V, doc 265. There is no abuse of discretion evident on our record

[7]    Plaintiff's argument on appeal that the reasonable-time provision merely sets an upper limit for cases where the one-year limit does not apply is plainly inconsistent with our case law, which has made it clear that – consistent with the language of the rule – the reasonable-time requirement applies to all Rule 60(b) motions, even if the motion implicates *and satisfies* the one-year limit as well. *See Cummings*, 365 F.3d at 954 (citing representative cases).

as to the district court's application of the governing law to matters plaintiff could have pursued in the underlying summary judgment proceeding.

Finally, the district court considered plaintiff's one allegation that was based on newly discovered evidence – evidence that one of the EIS employees who had complained about plaintiff's sexually inappropriate behavior (including his story about a visit to a strip club) had herself visited strip clubs. Plaintiff's argument was that this newly revealed indiscretion, assertedly at odds with the general tone of her complaints about him and more specifically with deposition testimony regarding a specific business trip she had taken, rendered her testimony unworthy of belief. But the district court noted that, consistent with its limited role on summary judgment, it had not *made* any credibility determinations when granting UPS's motion. Indeed, the issue on summary judgment was whether UPS legitimately acted on the basis of the EIS complaint about plaintiff; whether subsequently developed extrinsic evidence might cast doubt on the veracity of some of what the complaining party said (we note that she said a great deal more about plaintiff's lack of professionalism distinct from sexually inappropriate conduct) was simply not relevant to UPS's nondiscriminatory motivation. We have repeatedly held that the relevant inquiry in such cases concerns the belief of the employer that the employee engaged in misconduct, not whether the actual facts, as shown by evidence extrinsic to the employer's assessment, may have

been otherwise. *See, e.g.*, *Medley v. Polk Co.*, 260 F.3d 1202, 1207 (10th Cir. 2001); *Kendrick*, 220 F.3d at 1230-32; *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998).

In sum, plaintiff has not demonstrated any abuse of discretion with respect to the denial of his motion for relief under Rule 60(b). We therefore affirm the district court's ruling under review in appeal No. 05-1016.

### III. Award of Costs

As prevailing party, UPS sought and obtained costs under Rule 54(d)(1) in the amount of $52,461.87. The district court summarily denied plaintiff's ensuing motion for reconsideration, and plaintiff appealed.

The award of costs under Rule 54(d)(1) "rests in the sound discretion of the trial court." *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248 (10th Cir. 2002). An abuse of such discretion "occurs only where the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *Id.* (quotation omitted). As explained below, it is evident from the face of the district court's order and the cost documentation it addresses that the award under review is premised on an erroneous view of the law governing the availability of costs under Rule 54(d)(1). We therefore vacate

the award and remand for further proceedings consistent with the principles discussed herein. [8]

Absent some other statutory authorization, costs available to a prevailing party under Rule 54(d)(1) are limited to those specified in 28 U.S.C. § 1920:

> [T]he Supreme Court has examined the interrelation between Rule 54(d) and section 1920 and has determined that Rule 54(d) is not a separate source of power to tax as costs expenses not enumerated in § 1920. Instead, the Court determined that § 1920 defines the term "costs" as used in Rule 54(d), and that although a court in its discretion need not award section 1920 costs under Rule 54(d), it has no discretion to award items as costs that are not set out in section 1920.

*Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) (summarizing *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437 (1987)) (quotations and citations omitted); *see also Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 404 n.16 (5th Cir. 2002) (noting that revision of Rule 54(d) in 1993, creating separate subsections

---

[8] While plaintiff (now pro se) broadly challenges the cost award in several generally relevant respects, he has not specifically identified the particular legal errors we recognize here. To the extent that he could be deemed to have waived these errors, it nevertheless remains within our discretionary power to correct them. *See, e.g., Counts v. Kissack Water & Oil Serv., Inc.*, 986 F.2d 1322, 1325-26 (10th Cir. 1993). We consider the imposition of over $50,000 in costs, a substantial portion of which is plainly unauthorized, an appropriate occasion for the exercise of that discretion. *See, e.g., Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1440 (7th Cir. 1994) (correcting erroneous award of $30,439.57 for unauthorized computer research costs, despite party's waiver of issue, because it was "an issue of pure statutory construction and an important one at that").

dealing with costs and attorney fees, had no affect on *Crawford Fitting's* analysis of relationship of Rule to § 1920).

The district court included in its award matters that are not within the scope of § 1920, such as: fees and expenses incurred in connection with expert witnesses (in excess of the standard witness fee listed in § 1920(3) and fixed by 28 U.S.C. § 1821),[9] *see Crawford Fitting Co.*, 482 U.S. at 441-43; travel and other incidental expenses, see *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993); *Commr's of Highways v. United States*, 653 F.2d 292, 298 (7th Cir. 1981); *see also Bee*, 910 F.2d at 690 (holding counsel's accommodation and travel expenses not recoverable as costs under § 1920 may be recovered as part of attorney fee award authorized under different statute); and computer assisted legal research, *see Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir.

---

[9] Unauthorized expenses of this type may not be limited to those listed on the exhibit setting out $13,141.25 expressly attributed to witness fees, *see* R. supp. vol. 1, doc. 219, ex. A-6. In particular, we note that the exhibit for printing and copying costs, which are authorized by § 1920(3) and (4), appears to include an aberrationally high figure (by a factor of ten) for copies of records from an expert and cites "redacting" as part of the service involved. *Id.*, ex. A-5. Of course, if the redaction was not done by the expert but by counsel, it still could not be taxed, because tasks done by attorneys may be recoverable under fee provisions "but they are not properly a cost item." *Anderson v. Sec'y of Health & Human Servs.*, 80 F.3d 1500, 1508 (10th Cir. 1996); *see, e.g., Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 2004 WL 1631676, at *5 (N.D. Ill. July 19, 2004) (unpub.) (specifically holding that document redaction is not recoverable as cost, because it is "typically a task performed by an attorney or paralegal" and thus recoverable, if at all, as part of attorney fees).

1995) (specifically holding "that costs for computer legal research are not statutorily authorized"); *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (citing cases from several circuits). [10] While the underlying legal error is clear enough, [11] we

---

[10]      UPS neglects to cite any of the many cases expressly recognizing that computer research expenses are not authorized as a cost in § 1920, referring us instead to *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1254 (10th Cir. 1992), which is not pertinent. Courts have repeatedly clarified that computer research is not a separately taxable cost but "a substitute for an attorney's time that is compensable under an application for attorneys' fees." *United States ex rel. Evergreen Pipeline Constr. Co.*, 95 F.3d at 173 (citing cases); *Invessys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 22 (1st Cir. 2004) (holding computer research should be "reimbursed under attorney's fee statutes"). An attorney fee application was under review in *Whalen*, which thus had no need to address whether the computer research expense was recoverable as a cost under § 1920 – and, in fact, the court never mentioned § 1920. *See Whalen*, 974 F.2d at 1253-54.

[11]      In fairness to the district court, some of our cases, harking back to dicta from an older decision, have at times clouded what *Crawford Fitting* and *Bee* made clear. In *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235 (1964), the Court appeared to imply that costs could be awarded even if not authorized by 28 U.S.C. § 1920, with this statement: "[T]he discretion given district judges [under Rule 54(d)] to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." Later, *Crawford Fitting* held to the contrary (ruling that expert witness fees beyond the basic witness fee authorized by § 1920 were not allowed), characterized the *Farmer* statement as "classic *obiter,*" and expressly "disapprove[d] it." *Crawford Fitting Co.*, 482 U.S. at 443. In *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223 (10th Cir. 1988), however, we quoted the statement from *Farmer* and, in the course of addressing (though ultimately rejecting) a claim for costs outside the § 1920 list, noted that "[w]here a sufficient showing of necessity is made, the courts have held that . . . nonstatutory costs should be granted." *Id.* at 1245, 1246 n.29. *Touche Ross* did not acknowledge *Crawford Fitting*, only recently issued at the time, and all of the authorities it cited to illustrate the granting of non-statutory costs were decided before *Crawford Fitting*. In other respects the thorough explication of cost

(continued...)

-23-

cannot confidently isolate all and only those portions of the cost award affected. A remand of this aspect of the case is therefore necessary to enable the district court to sort out these factual matters.

Given the proviso on the controlling legal principle here, permitting the award of costs (and fees, for that matter) not included in § 1920 if these are otherwise statutorily authorized, it is important that we clarify a point regarding a potential source of such authorization unused here. In employment discrimination actions, a prevailing party may, in the court's discretion, secure a reasonable attorney's fee, including fees expended on experts, under 42 U.S.C. § 2000e-5(k). Thus, it would appear that UPS may have obviated some of the limitations associated with § 1920 discussed above had it timely sought, *see* Rule 54(d)(2), and substantively justified an attorney fee award under § 2000e-5(k). We hasten to add, however, that this was not a mere technical omission that might be excused in the interest of substantive justice over procedural formality. The Supreme Court has made it clear that a prevailing defendant seeking fees under

---

[11](...continued)
principles in *Touche Ross* is exemplary, and the deserved status of the opinion as a guidepost in this area has led to several instances where the quote from *Farmer* has been picked up by later cases that do not acknowledge its definitive rejection in *Crawford Fitting*, as recognized in *Bee*. *See, e.g.*, *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1476 (10th Cir. 1997); *Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123-24 (10th Cir. 1996); *Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995).

§ 2000e-5(k) must show "the plaintiff's claim was brought in bad faith, or was frivolous, unreasonable, or without foundation." *EEOC v. St. Louis-San Francisco Ry. Co.*, 743 F.2d 739, 744 (10th Cir. 1984) (following *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)); *see Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222*, 297 F.3d 1146, 1153 (10th Cir. 2002). UPS has made no such showing, nor did the district court characterize plaintiff's case in such terms when ruling on the merits.

Finally, we have considered plaintiff's broad arguments relating to whether the costs sought by UPS were reasonably incurred in connection with "materials necessarily obtained for use in the case." *Allison*, 289 F.3d at 1248 (quotation omitted); *see Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1339 (10th Cir. 1998). This is a question of fact to be determined by the district court, *Callicrate*, 139 F.3d at 1340, and thus reviewed by us only for clear error. The district court addressed the matter at length and with a first-hand sensitivity to the proceedings that we cannot match, reliant as we are on plaintiff's broad-brushed appellate objections. Those objections fail to persuade us of any clear error in the district court's determination. Thus, once the district court on remand identifies and quantifies those components of UPS's request that properly fall within the scope of § 1920, it need not (though, in the interests of justice it may) consider anew whether those authorized costs were reasonable and necessary for the litigation.

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with the principles discussed herein. Appellee's motion to file its brief in appeal No. 04-1251 under seal, provisionally granted by the clerk, is hereby granted by the panel.