**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 09-3818

———

IN RE: DIET DRUGS
(PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE)
PRODUCT LIABILITY LITIGATION

Sharon Bridgewater; Betty Brown-Riddle; Virginia Brutto; Dorothy Bryson;
Randy Chance; Mary Daley; Bethany Diggs; Nancy Femmer; Lorraine Fengel;
Karen George; Viola
Gierse; Jeanne Glardon; Diane Greer; Sandi Hanson;
Judy Hay; Linda Heddlesten; Deborah Hobart-Olson; Nancy Jines; Glenda Macy;
Diane McGath; Anita Myers; Lillian Olsen; Pamela Pickett; Barbara Pipes;
Peggy Rogers; Terry Rossell; Ronda Schuchmann; Rose
Sellers; Linda Smallman;
Ritzy Stokesberry; Denise Swanigan; Barbara Thoma; Charlene Toddd;
Thurma Walters; Betty Wilson,

Appellants

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 99-cv-20593)
District Judge: Honorable Harvey Bartle, III, Chief Judge

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 4, 2010

Before: AMBRO, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

(Filed June 7, 2010)

———

OPINION OF THE COURT

—

VAN ANTWERPEN, *Circuit Judge*.

Appellants are thirty-six class members of the *Diet Drugs* multidistrict litigation

("Bridgewater petitioners") represented by Joseph Simon. They appeal the order of the

United States District Court for the Eastern District of Pennsylvania denying as untimely

a motion for reconsideration or modification of pretrial order ("PTO") 7763A. Appellees,

Class Counsel,[1] ("Class Counsel") assert that the District Court did not abuse its

discretion in denying the motion as untimely. We agree with Class Counsel and will

affirm the District Court's order.

I.

Because we write solely for the parties, we will address only those facts necessary

to our opinion.

This appeal arises out of the *In re Diet Drug Product Liability Litigation*, a

multidistrict, nationwide product liability class action against the drug manufacturer

---

[1] The District Court identified "Class Counsel" as including Arnold Levin of Levin, Fishbein, Sedran & Berman; (2) Michal D. Fishbein of of Levin, Fishbein, Sedran & Berman; (3) John J. Cummings, III of Cummings, Cummings, & Dudenhefer; (4) Stanley Chesley of Waite, Schneider, Bayless & Chesley; (5) Gene Locks of Greitzer & Locks; (6) Sol Weiss of Anapol, Schwartz, Weiss, Wilentz, Goldman, & Spitzer; and (7) Charles Parker of Hill and Parker. The Court also other individuals as Sub-Class Counsel.

Wyeth.[2]  The District Court certified a class on August 26, 1999 to pursue claims against Wyeth for the manufacture and distribution of Pondimin and Redux, two appetite suppressants, after researchers discovered an association between taking the appetite suppressants and developing valvular heart disease ("VHD") and pulmonary hypertension ("PPH").  We have recounted the background of this case several times and will not recount it again now.  *See In Re Diet Drugs Prods. Liab. Litig.,* 582 F.3d 524, 529-37 (3d Cir. 2009); *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 389-91 (3d Cir. 2004); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 225-29 (3d Cir. 2002).

Relevant to this appeal is PTO 7763A, the order in which the District Court distributed the final fee award to attorneys who worked for the common benefit of the class.  The fee award compensated attorneys for work done related to the class action and for their future work pursuant to administering the Settlement Trust[3] until it closes in 2015.  The District Court invited any interested parties to submit a memorandum and attend a hearing on how to determine and distribute the final attorneys' fee award.  Ninety law firms claimed entitlement to common benefit funds.  After the hearing, an auditor submitted a report of the compensable time and expenses claimed by counsel, and informed the court that from the inception of the litigation Class Counsel expended

---

[2] Wyeth was formerly known as American Home Products Corporation but changed its name in 2002.  *In re Diet Drugs Prods. Liab. Litig.*, 582 F.3d 524, 530 n.2 (3d Cir. 2009).

[3] Wyeth funded a large Settlement Trust to pay-out benefits to class members.

3

553,020.53 hours working for the common benefit of the class, producing a lodestar of $156,849,247.24.

On July 16, 2007, Class Counsel and the Plaintiff's Management Committee ("PMC")[4] submitted a joint-petition for a final fee award. In it, the joint-fee petitioners noted that the Settlement Trust had paid out over $300 million in benefits per year to the class since it started making payments in 2001. Specifically, it noted that the Settlement Trust paid out $240 million in benefits in 2005 and 2006, and estimated,

> it appears clear that even if the Trust pays out Matrix benefits[5] at half the annual rate that has prevailed since the Trial Court approved the [Settlement Agreement] during the remaining five years in which most Class Members retain their eligibility for High Level Matrix benefits, substantially all the ~ $732 million that currently remains of the original Settlement Fund will be exhausted.

(App. 206-07.) The joint-fee petitioners also speculated that, if claims continued to be filed against the trust at the current rate of $240 million a year, the class members would

---

[4] The Court appointed the PMC to oversee, coordinate, and consolidate proceedings and to conduct discovery on behalf of all plaintiffs in this multidistrict litigation. The original members included: (1) Arnold Levin of Levin, Fishbein, Sedran & Berman; (2) John J. Cummings, III of Cummings, Cummings, and Dudenhefer; (3) Stanley Chesley of Waite, Schneider, Bayless, and Chesley; (4) Michael Hausfeld of Cohen, Mistein, Hausfeld & Toll; (5) Darryl J. Tschirn; (6) Elizabeth Cabraser of Lieff, Cabraser, Heimann and Bernstein; (7) Will Kemp of Harrison, Kemp & Jones; (8) Diane Nast of Roda Nast; (9) Michael Eschsner of Proctor & Papantonio; (10) John Restaino of Lopez, Hodes, Restaino, Milman, Skikos & Polos; and (11) Roger Brosnahan of Brosnahan, Joseph, & Suggs.

[5] Matrix benefits are benefits paid out to class members who were diagnosed with VHD after taking the appetite suppressants. The benefits were calculated through matrices that provided for varying levels of compensation based on the severity of the diagnosis.

receive a benefit that is greater than the total value of the Settlement Trust.[6] Because the

joint-fee petitioners estimated that the entire Settlement Trust would be exhausted, they

requested an award based on the total amount in the Settlement Trust.

On April 8, 2008, the District Court ruled on the joint-fee petition for a final award

in PTO 7763A, the focal point of this appeal. The court valued the Settlement Agreement

at approximately $6.44 billion. It noted that, at the time the joint-fee petitioners filed

their claim, $732 million remained available in the Settlement Trust, and it estimated

"based upon that average amount of Matrix Benefits the Trust has paid per year . . . [,]

that is, approximately $240,000 per year," that the Settlement Trust would be exhausted.

*In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 469 n. 47 (E.D. Pa. 2008).

Assuming that the Settlement Trust would be exhausted, the District Court applied

percentage-of-recovery analysis to the entire $6.44 billion to determine the fee award for

counsel. It concluded an award equal to 6.75% of the recoveries was fair and appropriate,

and awarded the joint-petitioners $434,511,711.22 in fees. On July 21, 2008, the District

Court entered PTOs allocating the aggregate fee awards among the ninety joint-fee

applications, and certified the award as final. Two appeals followed. Because no one

sought a stay of the fee award, the award was distributed.

On April 8, 2009, the Bridgewater petitioners filed a motion to reconsider or

---

[6]Wyeth agreed to pay any shortfall if the Settlement Trust were inadequate to compensate class members entitled to matrix benefits.

modify the fee award ordered in PTO 7763A under Federal Rule of Civil Procedure 60(b) pursuant to subsections (1), (2), (3), and (6). In the motion, the Bridgewater petitioners did not explain why they waited one year to file the motion. They did, however, argue the fee award was excessive. The claimants noted that the monthly trust reports indicated that the Settlement Trust only paid out $69,980,000 in benefits in 2007, and $53,722,117 for 2008, far below the estimated $240 million annual pay-out. Based on this information, they contend there is a trend toward diminishing pay-outs and speculated that there will be between $400 and 500 million remaining in the Settlement Trust when it closes. Therefore, they assert that the firm of Levin, Fishbein, Sedran & Berman should not have collect advanced attorneys' fees on these funds because they may never benefit the class.[7] In response, Class Counsel offered an unopposed declaration from Warren Bruck Bilkner, Ph.D., a bio-statistician who, after studying the Matrix payments, concluded that there "is no reasonable basis to conclude that the monthly payments data of the Trust for the period of January, 2007 through March, 2009 demonstrates a trend

---

[7] We have noted that the appropriate inquiry for attorney fee awards is the benefit actually received by the class. *In re Prudential Ins. Co. v. Am. Sales Practice Litig.*, 148 F.3d 283, 336 n.116 (3d Cir. 1998). Therefore, Class Counsel's award should be related to the amount of the Settlement Trust that actually benefits the class, not just the amount made available for the class. *Id.*

If funds received by Class Counsel are not distributed to class members, then all Class Counsel received fees based on funds that did not benefit the class. Joseph Simon, the Appellant's counsel, however, singled out Levin, Fishbein, Sedran & Berman to not receive fees because he alleged that if fees were withheld from other firms "he will be effectively blackballed from the 'class action/mass tort world.'" (App. 9 n.5, 1144-45.)

6

toward decreasing Matrix payments over time." (App. 9.)

On August 27, 2009, the District Court denied the Bridgewater petitioners' Rule 60(b) motion as untimely. It found the one-year delay unreasonable because the claimants offered no explanation for it, and the court could "discern no reason [for delay] given that they had access to much of the information they relied upon to support their motion" the day the PTO was ordered. (App. 10.) The court also noted "there would be severe prejudice to the 90 different law firms that received their fees and costs pursuant to PTO No. 7763A if we were to grant reconsideration." (*Id.*) The Bridgewater petitioners filed a timely appeal to this Court.

## II.

The District Court had jurisdiction over this multidistrict litigation pursuant to 28 U.S.C. § 1332(a), and § 1407. We have jurisdiction under 28 U.S.C. § 1291 because orders denying motions under Rule 60(b) are final orders. *Lasky v. Cont'l Prod. Corp.*, 804 F.2d 250, 253 (3d Cir. 1986). We review a district court's denial of a Rule 60(b) motion for abuse of discretion. *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 342 (3d Cir. 2003).

## III.

The Bridgewater petitioners filed a Rule 60(b) motion under subsections (1), (2), (3), and (6) to reopen PTO 7763A on April 8, 2009, exactly one year after the District Court entered PTO 7763A.

Motions filed pursuant to Rule 60(b) are "directed to the discretion of the trial court, and its exercise of that discretion will not be disturbed unless there is clear error and abuse of discretion." *SEC v. Warren*, 583 F.2d 115, 120 (3d Cir. 1978). Relief should only be made available if the claimant presents circumstances that overcome the "interest in the finality and repose of judgments." *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir. 1987) (citation omitted).

All motions filed pursuant to Rule 60(b) must be made within a "reasonable time." Fed. R. Civ. P. 60(c). Additionally, claims made under subsections (1), (2), and (3) are untimely *per se* if made more than one year from the date of the entry of the order or judgment. *Id.*; *Moolenaar v. Gov't of Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987). Therefore, claims made under clauses (1), (2), and (3) must be brought within one year of the entry of judgment to be timely, but even if they are, they may still be untimely if an unreasonable period of time has passed. *Moolenaar*, 822 F.2d at 1346; *see also Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1178 n.7 (10th Cir. 2005) (noting "the reasonable-time requirement applies to all Rule 60(b) motions, even if the motion implicates *and satisfies* the one-year limit as well"); CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2866, at 389, 391 (West 1995).

What constitutes a "reasonable time" depends on the circumstances of each case. *Delzona Corp. v. Sacks*, 265 F.2d 157, 159 (3d Cir. 1959). A court considers many factors, including finality, the reason for delay, the practical ability for the litigant to learn

8

of the grounds relied upon earlier, and potential prejudice to other parties. *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986); *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981). What constitutes a "reasonable time" also depends on which Rule 60(b) clause a claimant is trying to avail. We have noted that relief under Rule 60(b)(6) is extraordinary because it can be given for "any other reason justifying relief" and is not subject to an explicit time limit. *Coltec Indus. Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002). Therefore, a claimant must establish exceptional circumstances justifying the delay for filing under Rule 60(b)(6).

The Bridgewater petitioners filed their Rule 60(b) motion exactly one year after PTO 7763A was entered; therefore, their motion was not untimely *per se* under clauses (1), (2), and (3). The Bridgewater petitioners did not offer any explanation for the one-year delay in their motion to the District Court, and we will not review the four explanations they have offered for the first time on appeal. *See, e.g.*, *Sovereign Bank v. B.J.'s Wholesale Club, Inc.*, 533 F.3d 162, 182-83 (3d Cir. 2008). The District Court considered the principles of finality, noted that the claimants did not explain their delay and it could not intuit one, and noted the extreme prejudice that granting the Rule 60(b) motion would have on the ninety law firms who have already received their fee awards. Because the District Court considered the appropriate factors and gave a well-reasoned explanation for its denial, we cannot find that the District Court abused its discretion. Therefore, we will affirm it's judgment.

9