**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 25, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SOLEDAD BALTAZAR,

          Plaintiff - Appellant,

v.

ERIC K. SHINSEKI, Secretary,
United States Department of Veterans
Affairs,

          Defendant - Appellee.

No. 11-1343
(D.C. No. 1:10-CV-00308-WYD-CBS)
D. Colorado

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

I.     **Introduction**

       Plaintiff-Appellant Soledad Baltazar was terminated from her temporary

appointment as a registered nurse with the Department of Veterans Affairs

("VA").  She thereafter filed a complaint against Defendant in his official

capacity, alleging violations of the Rehabilitation Act of 1973 and Title VII of the

Civil Rights Act of 1964.  The United States District Court for the District of

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Colorado granted summary judgment in favor of Defendant, concluding, *inter alia*, that Baltazar failed to produce sufficient evidence from which a reasonable jury could conclude she was substantially limited in a major life activity or that her termination was motivated by unlawful discrimination. Baltazar challenges the grant of summary judgment, arguing the district court erroneously weighed the evidence presented by the parties. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm**.

## II.    Background

In 2003, Baltazar obtained a temporary appointment with the VA as a registered nurse. Baltazar's temporary appointment was extended each year until her termination in 2008. At the time she was hired, she did not qualify for a permanent position because she was not a United States citizen.

Baltazar first worked as a staff nurse at the Eastern Colorado Health Care System facility ("ECHCS") in Denver. While in that position, she suffered both wrist and back injuries which required her to be temporarily placed in light duty assignments because of lifting restrictions. After a fourth injury in early 2007, Baltazar was eventually moved from direct patient care to a position as a charge nurse. Alesia Coe, the Associate Director of Nursing Services, was Baltazar's second line supervisor and Johnna Greeley was her direct supervisor.

Shortly after she started in the charge nurse position, Baltazar told Greeley she was unhappy because the staff was not listening to her. Greeley testified she

received feedback from nurses, nursing supervisors, and Baltazar herself that Baltazar was "overwhelmed" in the charge nurse position. Coe testified she and Greeley discussed concerns about Baltazar's effectiveness in the position, including issues with her critical thinking and decision making. Coe also discussed Baltazar's performance as a charge nurse with Melody Ramos, one of the evening supervisors. Ramos told Coe there were problems with Baltazar's critical thinking and leadership skills and she was unable to "convey to the staff what needed to be accomplished on her shift." Another nursing supervisor, Patricia Barrow, told Coe she spent a "considerable amount" of time helping Baltazar "make basic decisions" and "refereeing disputes" between Baltazar and the staff.

Less than a month after being assigned to the charge nurse position, Baltazar asked for a different assignment. Coe identified a position at an outpatient clinic in Lakewood, Colorado (the "Lakewood Clinic") that would accommodate Baltazar's light duty restrictions. Baltazar did not refuse the assignment but requested reassignment to a different facility for personal reasons, including the expense of the twenty-five mile commute and coordination of child-care. Coe testified there were no other open positions that met Baltazar's lifting restrictions at the time she was assigned to the Lakewood Clinic.

Baltazar worked at the Lakewood Clinic from January 31, 2008, to March 10, 2008. Based on her requests, she was reassigned to an outpatient clinic in

Aurora, Colorado (the "Aurora Clinic") in March 2008. During Baltazar's orientation, the charge nurse at the Aurora Clinic, Martha Weeks, reported concerns about her performance to the nurse manager of the ambulatory clinics, Valerie Owens. Specifically, Weeks told Owens that Baltazar was not properly triaging patient calls and had once released a walk-in patient before a provider was able to review the patient's EKG. Owens reported the concerns to her supervisor, Eric Rogers, who testified he became concerned about patient safety. He instructed Owens to pass the information along to Coe, who was still Baltazar's permanent supervisor. After learning of Baltazar's performance problems at the Aurora Clinic, Coe terminated her temporary appointment. Coe testified the decision to terminate Baltazar was based on feedback she received from Owens, Ramos, Barrows, Weeks, and Greeley about Baltazar's performance at the two outpatient clinics and as a charge nurse at ECHCS.

After her termination, Baltazar filed an EEOC compliant alleging discrimination based on disability, national origin, sex, race, and retaliation. This lawsuit followed. In her federal complaint, Baltazar alleged both that she is a qualified disabled individual due to her back and wrist injuries[1] and that Defendant regarded her as disabled. She also alleged being subjected to disparate

---

[1] Baltazar also alleged disability based on "severe depression" but has abandoned that claim on appeal.

treatment because of her race, national origin, and sex.[2]  Finally, she alleged she

was terminated in retaliation for engaging in activity protected by Title VII and

the Rehabilitation Act.  Defendant moved for summary judgment and the district

court granted the motion as to all of Baltazar's claims.

## III.   Discussion

This court reviews a district court's grant of summary judgment *de novo*,

applying the same legal standard used by the district court.  *Jones v. Okla. City

Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010).  We will affirm the district court

if the pleadings and admissible evidence demonstrate "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  In the course of our review, we "view the evidence and

draw reasonable inferences therefrom in the light most favorable to the

nonmoving party."  *Proctor v. UPS*, 502 F.3d 1200, 1205 (10th Cir. 2007).

A.  Rehabilitation Act Claim

The Rehabilitation Act provides that "[n]o otherwise qualified individual

with a disability . . . shall, solely by reason of her or his disability, be excluded

from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial

assistance."  29 U.S.C. § 794(a).  A plaintiff can withstand a motion for summary

---

[2]Baltazar has abandoned a hostile work environment claim that was
dismissed by the district court.

judgment on a Rehabilitation Act claim if she demonstrates, *inter alia*, that she is a disabled person under the Act. *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010). Baltazar has attempted to meet this burden by showing Defendant regarded her as having a physical impairment that substantially limits the major life activity of working. 42 U.S.C. § 12102(1)(C), (3); 29 U.S.C. § 794(d); *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004). She supports this argument with evidence Defendant knew she could not work directly with patients because of her lifting restriction. She also paradoxically argues (1) Defendant placed her in light duty jobs to accommodate her restrictions and (2) refused to find her a light duty job after she received negative evaluations at the Aurora Clinic. None of this evidence supports Baltazar's burden of showing Defendant regarded her as having an impairment that substantially limited the major life activity of working.[3] "Where the recognition of [a plaintiff's] limitations is not an erroneous perception, but is instead a recognition of fact, a finding that [the plaintiff] was regarded as disabled is inappropriate." *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241-42 (10th Cir. 2001) (addressing

---

[3]Citing to a portion of Valerie Owens's deposition testimony, Baltazar asserts Owens testified she was a "problem at the Aurora Clinic because she could not sit continuously." The portion of the record referenced in Baltazar's brief does not support this contention. Furthermore, this court has reviewed all portions of Owens's deposition included in the record. That review reveals no such testimony on the part of Owens. Counsel is reminded of her duty to act with candor toward the court.

claims under the Americans With Disabilities Act); *see also Detterline v. Salazar*, 320 F. App'x 853, 858 (10th Cir. 2009) (unpublished disposition) ("The fact that an employer recognizes an employee's physical restrictions and places him in a position allowing him to work within those restrictions does not, by itself, show that the employer regarded him as disabled."). Baltazar's evidence does nothing more than confirm Coe correctly recognized she had lifting and sitting restrictions. Because there is no evidence Coe misperceived Baltazar's physical limitations, we have no hesitation concluding Baltazar failed to meet her burden of showing she is a disabled person under the Rehabilitation Act. *See Lusk*, 238 F.3d at 1242. The district court properly granted summary judgment in favor of Defendant on this claim.

### B.  Retaliation Claim

Baltazar next argues she was terminated in retaliation for filing prior EEO complaints. Because she relies on indirect evidence to support this claim, she must first establish a prima face case of retaliation by showing (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). Defendant argues Baltazar has failed to show she engaged in protected opposition to discrimination. The parties dispute whether Baltazar filed a complaint of discrimination with the EEOC on January 30, 2008, and

Baltazar argues there is a genuine dispute of fact on this point precluding summary judgment in favor of Defendant. It is unnecessary to set out the parties' competing arguments because we conclude, as did the district court, that even assuming Baltazar engaged in protected activity, her claim fails because she cannot show a causal connection between that activity and her termination.

An employee cannot establish a causal connection between the protected opposition and the adverse employment action unless she can show her superior knew she engaged in such protected opposition. *Petersen v. Utah Dep't of Corr.,* 301 F.3d 1182, 1188-89 (10th Cir. 2002) ("An employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition."). Coe testified she was not aware of any prior EEOC complaints filed by Baltazar. Baltazar attempts to create a genuine issue of material fact over this issue, arguing she was told by the EEOC manager that she had discussed the January 30th complaint with Coe. The district court was correct to conclude these alleged statements are inadmissible hearsay and, thus, cannot be used to support Baltazar's burden of demonstrating Coe was aware of her alleged EEOC complaint. Because Baltazar points to no admissible evidence that supports her prima facie burden, the district court properly granted summary judgment to Defendant on this claim.

C.  Title VII National Origin Claim

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Baltazar's appellate arguments are confined to allegations she was terminated because of her national origin (Filipino).[4]  To survive a motion for summary judgment, a terminated plaintiff relying on indirect evidence of national origin discrimination must first establish a prima facie case by showing (1) she belongs to a protected class, (2) she was qualified to perform her job, (3) she was terminated, and (4) the circumstances surrounding her termination give rise to an inference of discrimination.  *Plotke v. White*, 405 F.3d 1092, 1099-1101 (10th Cir. 2005).  Once the plaintiff meets this burden, the employer must articulate a legitimate, nondiscriminatory reason for the termination.  *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir.

---

[4]Baltazar's complaint contained allegations she was terminated because of her race (Asian) and her sex (female), but her opening appellate brief contains no arguments related to these claims.  Her claim she was terminated solely because she spoke with an accent is not cognizable under Title VII.  29 C.F.R. § 1606.1.  Evidence she spoke with an accent, however, may be relevant to her burden of proving she was terminated because of her national origin.  *See Zokari v. Gates*, 561 F.3d 1076, 1090 (10th Cir. 2009) ("[C]omments regarding a plaintiff's accent may constitute circumstantial evidence of discrimination based on national origin.").

2006). The burden then shifts back to the plaintiff to show "there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id*. (quotation omitted).

Defendant has conceded that Baltazar met the first three elements of her prima facie burden. As to the fourth element, the district court concluded Baltazar had presented no evidence of circumstances giving rise to an inference of unlawful discrimination and, thus, failed to meet her prima facie burden. This court has previously noted that the fourth element of the prima facie burden applicable in cases like this involves an inquiry similar to the one surrounding a plaintiff's burden of demonstrating pretext. *Sorbo v. UPS*, 432 F.3d 1169, 1173 n.5 (10th Cir. 2005). It is unnecessary to resolve whether the district court should have analyzed Baltazar's evidence by reference to the prima facie case or the pretext inquiry because her "evidence of discrimination/pretext fails as a matter of law." *Id*. at 1174.

Defendant states Baltazar was terminated from her temporary assignment because of "a continued pattern of performance deficiencies." A plaintiff can attack an employer's articulated reason for the termination by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). Baltazar argues

she has presented sufficient evidence to create a triable issue as to whether Defendant's proffered reason is pretextual. She relies heavily on a written performance evaluation by Martha Weeks that states she needed "improvement with oral skills secondary to language and accent to assure understanding by others." Baltazar argues this statement referencing her accent is evidence she was terminated because of her national origin and not because of her deficient performance. Her argument falls short for several reasons.

First, Baltazar does not argue the comment was made in a derogatory manner and does not challenge Defendant's assertion that a nurse must be able to effectively communicate with patients and staff. *See Carino v. Univ. of Okla. Bd. of Regents*, 750 F.2d 815 (10th Cir. 1984) (implying an employer may consider an employee's foreign accent if it interferes with the employee's ability to perform her job); *see also Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 549 (6th Cir. 1991) ("Unlawful discrimination does not occur . . . when a plaintiff's accent affects his ability to perform the job effectively."). Baltazar's own expert testified she is "somewhat hard to understand" and has difficulty "expressing herself in English." More importantly, however, Baltazar has presented no evidence that Weeks, who made the statement, was involved in the decision to terminate her. *See Plotke*, 405 F.3d at 1101 (holding "actions or remarks made by decisionmakers" that reflect a discriminatory animus may give rise to an inference of unlawful discrimination (quotation omitted)); *id*. at 1107 (emphasizing that

-11-

remarks made by the *decisonmaker* could support an inference of unlawful discrimination). To the extent Baltazar argues Coe's decision was influenced by the alleged bias of Weeks, the record contains no evidence from which a fact-finder could conclude that Weeks intended her statement about Baltazar's accent to result in Baltazar's termination. *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011) ("[I]f a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is the proximate cause of the ultimate employment action, then the employer is liable . . . ."). To the contrary, Baltazar admits that no supervisor who evaluated her performance, including Weeks, Barrow, Owens, Greeley, and Ramos, recommended she should be terminated.

Baltazar offers an assortment of other arguments Defendant's proffered explanation for her termination is weak or implausible, including assertions that negative evaluations of her performance were overstated or unfair. She has failed, however, to support these assertions with any record evidence and has wholly failed to show that Coe knew reports of her deficient performance were fabricated or inaccurate. *See Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001) ("In determining whether the proffered reason for a decision was pretextual, [courts] examine the facts as they appear to the person making the decision." (quotations omitted)). Baltazar additionally argues she was terminated shortly before she became a United States citizen because Defendant did not want

her to gain status as a permanent employee. The only evidence in the record contradicts, not supports, her self-serving and conclusory assertion that she would automatically become a permanent employee when she became a citizen. Thus, the timing of Baltazar's termination does not support her burden of showing pretext.

In short, the lack of record evidence supporting Baltazar's arguments means she has fallen far short of demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan*, 108 F.3d at 1323 (quotation omitted). The district court properly granted summary judgment to Defendant on Baltazar's Title VII national origin discrimination claim.

## IV. Conclusion

The judgment of the United States District Court for the District of Colorado is **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge