**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICK J. MEDLOCK,

      Plaintiff-Appellant,

v.

                             No. 09-5109

UNITED PARCEL SERVICE, INC.,

      Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:08-CV-00023-GKF-TLW)**

---

Submitted on the briefs:[*]

J. Vince Hightower, Broken Arrow, Oklahoma, for Plaintiff-Appellant.

Stephanie K. Osteen and Christina A. Jump, of Akin Gump Strauss Hauer & Feld LLP, Dallas, Texas, for Defendant-Appellee.

---

Before **McKAY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

**EBEL**, Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Patrick J. Medlock appeals from a district court order granting summary judgment to his former employer, United Parcel Service, Inc. (UPS), on his federal claim under the Age Discrimination in Employment Act (ADEA) and his correlative state "*Burk* tort" claim, *see Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989).[1] The district court held that Medlock had failed to create a triable issue as to whether the justification given for discharging him and subsequently denying his request for reinstatement was pretextual.[2] We review the district court's grant of summary judgment de novo, *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008), and affirm for the reasons explained below.

## I. Legal Framework

We view the facts, and all reasonable inferences therefrom, in a light most favorable to Mr. Medlock, the party opposing summary judgment. *Id.* "Summary judgment is . . . appropriate if, but only if, the evidence reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.*

---

[1] The Oklahoma Supreme Court has recently confirmed that a *Burk* tort claim is available for age discrimination, notwithstanding the existence of the federal statutory remedy under the ADEA. *See Kruchowski v. Weyerhaeuser Co.*, 202 P.3d 144, 145-46, 151 (Okla. 2008); *see also Saint v. Data Exch., Inc.*, 145 P.3d 1037, 1039 (Okla. 2006).

[2] We recognize that the district court did not address some evidence Medlock had offered to show age discrimination directly, distinct from the method of indirect proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See generally Sanders v. SW Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008) (discussing direct and indirect proof of discrimination), *cert. denied*, 130 S. Ct. 69 (2009). We take up that evidence later and conclude it also fails to satisfy Medlock's burden to demonstrate a triable claim of age discrimination.

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). But if the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard "by identifying a lack of evidence for the nonmovant on [that] element." *Id.* (quotation omitted). That is the situation here, where the district court held Medlock had failed to demonstrate a triable issue of pretext necessary to the legal sufficiency of his discrimination claims.

This case differs from the typical discriminatory-termination suit in that it is not really about Medlock's termination, which was based on a legitimate disciplinary policy that he concedes (as he must on our record) was evenhandedly applied. Rather, the focus of this case is on the allegedly discriminatory refusal to reinstate Medlock like many other employees initially terminated for the same or similar conduct. *See* Reply Br. at 10 (clarifying that "[t]he disparate treatment practiced on Medlock by UPS was not his initial employment termination . . ., but UPS' refusal to reinstate Mr. Medlock during the grievance process"). Thus, the crux here is not the reason given for terminating Medlock, but the explanation given for denying his grievance seeking reinstatement.

In order to defeat summary judgment by creating a triable issue of pretext, Medlock had to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [explanation for denying

reinstatement] . . . that a reasonable factfinder could rationally find [it] unworthy of credence and hence infer that [UPS] did not act for the asserted non-discriminatory reasons." *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008) (quotation omitted). A common way to do this, and the one primarily relied on by Medlock here, is to present evidence of "differential treatment of similarly situated employees." *Id.* We summarize the evidence below.

## II. General Factual Background

Medlock lost his job as a driver for UPS when he was fifty-six years old. He was fired by Tulsa Division Manager Marc Cortez for having an avoidable runaway accident. Article 52 of the collective bargaining agreement (CBA) between UPS and the Teamsters Union includes such accidents among the causes for summary discharge (colloquially referred to as "Article 52" infractions). Medlock filed a grievance seeking reinstatement, which was denied at the local level by Cortez and UPS District Labor Manager Matt Hoffman, whose decision remained undisturbed at the highest level of grievance review. While Medlock's ensuing EEOC complaint referred to his discharge (and mistakenly attributed it to his more immediate supervisor, Brent Kashwer, in addition to Cortez), his case has come to focus on the allegedly discriminatory motives of Cortez and Hoffman in refusing to reinstate him in the grievance process.

The runaway accident occurred when Medlock was making a delivery to a gated location on his rural route. He exited his truck to punch in the code for the gate, which began to open very slowly inward. While waiting for the gate, he went to the back of the truck to prepare packages for delivery. At this point the truck moved forward and rolled into the gate, which later had to be cut off from the front bumper with a welding torch. Medlock promptly reported the incident to the UPS office. Two supervisors, one of whom was Mr. Kashwer, arrived to investigate and bring Medlock back to the UPS Tulsa hub. Another driver completed his deliveries for the day and Medlock was placed on paid leave pending investigation results. His truck, in particular its parking brake and transmission assembly, were inspected and found to be in good working order by UPS Automotive Supervisor Richard Hawk and a UPS mechanic.

Kashwer brought the information, documents, and findings of the investigation to Cortez, who made the decision to terminate Medlock for an avoidable runaway accident pursuant to Article 52 of the CBA. Prior to that, however, Medlock–who insisted he had properly set the parking brake and put the truck in gear–suggested that an engine compression problem might have caused the truck to roll despite his precautions. The truck was sent for further testing, which did not support Medlock's exculpatory suggestion. He was terminated and thereafter denied reinstatement, as already touched on above.

There are additional pertinent facts, particularly relating to Medlock's conduct in the grievance process and UPS's reinstatement of other employees who were terminated for comparable Article 52 infractions. We set out and address these facts where relevant to the analysis of the legal issues raised by this appeal, to which we turn next.

### III.  Discipline, Reinstatement, and Pretext

The bulk of Mr. Medlock's argument on appeal concerns the treatment of eight younger UPS drivers who he asserts were similarly situated to him by virtue of their misconduct but kept their jobs. Like Medlock, these "comparators" were initially fired by Division Manager Cortez for Article 52 infractions. All save one, however, were reinstated voluntarily by UPS–and by the same managers, Cortez and District Labor Manager Hoffman, who refused to reinstate Medlock. He also discusses another set of younger terminated-but-reinstated drivers that is both narrower and broader than the first:  narrower in that these three drivers all committed the same Article 52 infraction as Medlock, and broader in that two fall outside the scope of Cortez's tenure at the Tulsa division. One driver, Travis Thompson, fits into both groups and is the subject of Medlock's sharpest comparison for pretext purposes, so we will consider him first. But before we get to any of the identified comparators, we address a threshold objection advanced

by UPS to the use of any grievance resolutions involving other employees to establish discriminatory animus toward the plaintiff.[3]

UPS relies primarily on a district court decision holding that a plaintiff "cannot base a Title VII claim on the [more favorable] settlement of other employees' grievances." *Magruder v. Runyon*, 844 F. Supp. 696, 704 (D. Kan. 1994), *aff'd*, No. 94-3069, 1995 WL 311740 (10th Cir. May 22, 1995). UPS also notes that the district court in *Magruder* relied, in turn, on *Carey v. United States Postal Service*, 812 F.2d 621 (10th Cir. 1987), which, the district court stated, "rejected a similar claim." *Magruder*, 844 F. Supp. at 704. But UPS fails to note that the Tenth Circuit panel that affirmed *Magruder* disavowed the district court's categorical exclusion of grievance settlements from the pretext analysis as a *misreading* of *Carey*: "As for the alleged disparity in the [employer's] settlement of grievances, we do not believe that our opinion in *Carey* should be read to preclude all claims of discriminatory settlement of grievances."[4] *Magruder*, 1995 WL 31170, at \*2. Instead, the panel affirmed the

_____

[3] UPS advances this as an argument that Medlock has failed to establish a prima facie case of age discrimination, but the authority it relies on concerns the demonstration of pretext, which is also the focus of our review here.

[4] *Carey* did not involve disparate resolution of similar employee grievances, as present here and in *Magruder*, but an entirely different situation. In *Carey*, a white plaintiff alleged discrimination after losing out on a promotion to a black co-worker. The employer explained that it gave the promotion to the co-worker to settle an EEOC complaint he had brought for being passed over for promotion earlier. All *Carey* held was that "[c]onciliation agreements which settle Title VII

(continued...)

-7-

grant of summary judgment for the employer by looking to the circumstances of the contrasted grievance settlements–like any other instance of differential treatment asserted as evidence of pretext–and concluding that "[t]he disparate treatment of the five males' grievances does not raise an inference of pretext because the men were not similarly situated [to the plaintiff]." *Id.* We follow the same course here.[5]

[4](...continued)
claims may not be considered independent acts of discrimination against those not benefitted by the agreement." 812 F.2d at 624 (quotation and alteration omitted). *Carey* does not support, as UPS and the *Magruder* district court opinion suggest, the quite different proposition that inconsistent treatment of similarly situated employees somehow ceases to be material to the pretext inquiry if that treatment concerns their grievances–so that, as relevant here, an employer could selectively disfavor an older employee (or any protected class) with impunity as long as it waited until the grievance process to effectuate the discriminatory policy.

[5]     UPS advances several arguments for affirming summary judgment at the prima facie case stage of the analysis rather than the pretext stage at which the district court made its ruling. These arguments are generally meritless. First, UPS cites Medlock's failure to show that his route was given to a younger driver after his termination, as if that were a necessary element of the prima facie case in every age discrimination suit. But the appropriate formulation of the prima facie case is flexible, looking to those logically salient circumstances of each case that may raise the requisite inference of discrimination. *Plotke v. White*, 405 F.3d 1092, 1099-1100 (10th Cir. 2005). Thus, "where [as here] an employer contends the actual reason for termination is . . . unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant," *id.* at 1100, and a comparison to the disparate discipline meted out to younger co-workers is appropriate, *see Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173-74 (10th Cir. 2005). Second, UPS notes all of the comparators were terminated, just like Medlock. Of course they were; but this case is about disparate *reinstatement*. As for UPS's third contention, objecting to the use of grievance settlements as evidence of disparate treatment, we have just explained above why that is meritless. Finally, UPS contends that the comparators are not in fact similarly

(continued...)

## A. Reinstatement of Travis Thompson

Cortez terminated Travis Thompson under Article 52 after an avoidable runaway accident, but later agreed to reinstatement in settlement of Thompson's resultant grievance. At his deposition, Cortez explained that the basis for reinstating Thompson–and, as we will see, several other comparators–was that Thompson admitted and expressed remorse for the infraction. *See* Aplt. App. at 319-21. Cortez specifically noted that remorseful acknowledgment of error is what distinguished Thompson from Mr. Medlock.[6] *Id.* at 322-23. Medlock does not challenge the soundness of treating employees who admit error and indicate a motivation to avoid it in future differently than those who do not–nor would we be in a position to second-guess such business judgment in any event, *see, e.g.*, *Salguero v. City of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000). Rather,

---

[5](...continued)
situated to Medlock. As this contention turns on the reasons given for reinstating the comparators and refusing to reinstate Medlock, it goes to the justification-versus-pretext inquiry as much as to the prima facie case. Since we ultimately agree that the reasons given have not been shown to be pretextual in any event, we need not definitively attribute the deficiency in proof to a particular point in Medlock's circumstantial case for discrimination. *See id.* at 1173 n.5, 1174.

[6]     Matt Hoffman, who jointly resolved Medlock's local grievance (and those of the comparators) with Cortez, expressed a stronger version of this rationale for refusing to reinstate Medlock: Hoffman felt Medlock was prevaricating in his attempt to deny his own operating error and deflect responsibility for the runaway accident through vague and unsubstantiated suggestions of mechanical failure. *See* Aplt. App. at 162-63 (deposition pages 69-74).

Medlock points to several aspects of Cortez's deposition testimony that, he claims, undercut in different ways this stated justification for the disparate treatment.

First, Medlock notes that Cortez could not remember the incident involving Thompson when initially questioned about it, yet an hour later was able to come up with the specific reasons why he reinstated Thompson but not Medlock. But a straightforward explanation for this came from Cortez himself: he had "been looking through the paperwork over the last hour" and had refreshed his memory. Aplt. App. at 320. Medlock cites no authority, nor are we aware of any, indicating that a memory refreshed in this way is per se insufficient to support summary judgment. On the contrary, see *Crockett v. Abraham*, 284 F.3d 131, 133-34 (D.C. Cir. 2002) (granting summary judgment for employer based on justification for denial of promotion provided by decision-maker only after she refreshed her memory through review of pertinent records).

Second, Medlock points to one response in Cortez's deposition where he referred to Thompson as "[t]his young man." Aplt. App. at 320. We cannot agree with Medlock that this one passing use of a common colloquial reference to a younger adult male, used well after the operative events giving rise to this suit, materially undercuts the facial neutrality of the reason given by Cortez for reinstating Thompson but not Medlock.

Third, Medlock makes much of Cortez's acknowledgment that his practice of reinstating Article 52 violaters who admitted misconduct and pledged to correct it was not mandated by a formally documented UPS policy. Evidently, the tacit premise here is that an otherwise reasonable justification for a business decision somehow loses its legitimacy simply because it reflects an exercise of managerial judgment rather than a ministerial execution of written policy–as if a manager could not legitimately fire an employee for vandalizing property, stealing from co-workers, or assaulting a customer absent a formal company policy specifically addressing such misconduct. Medlock offers no authority for this facially untenable idea, which is belied by countless employment discrimination cases decided on the basis of legitimate business justifications without any reference to formal policies necessarily legitimizing those justifications. Indeed, such a constricted view of legitimacy would render suspect innumerable decisions required in the practical operation of the workplace, leaving the management of businesses open to just the sort of second-guessing the case law consistently admonishes against. The decision at issue here is a case in point: we are asked to second-guess a classic (and facially plausible) business judgment by a manager, regarding the disciplinary relevance of an employee's remorseful acceptance of responsibility, simply because that judgment had not been preordained by a written policy. The law does not permit, much less require, us to do so.

-11-

Finally, and more materially, Medlock cites this qualification by Cortez in his response regarding the reinstatement of a hypothetically remorseful Medlock:

> If Mr. Medlock had come in and said "I left the vehicle in neutral" or "I didn't set the park brake; it was my fault, I'm remorseful[,]" then the outcome *could have* turned out differently. *I can't* sit here and *say yes, for sure* he would have been able to come back.
>
> . . . .
>
> *Chances are* I would have [let him come back].

Aplt. App. at 323 (emphasis added). There is no further elaboration or follow-up explanation of this qualification, at least on the incomplete record of the deposition provided us. Thus, we are left with a bald concession by the decision-maker that, even if the asserted justification for treating Medlock differently had been absent, he might still have been treated differently.

There may well be other reasonable interpretations of or explanations for the qualification expressed by Cortez, but one is relevant to the critical issue of motivation: it is an acknowledgment that the reason given as the sole basis for reinstating Thompson but not Medlock was not necessarily the only basis for treating these two employees differently. Thus, the asserted justification for the disparate treatment does not fully negate the possibility that age discrimination could have played a role in a potentially mixed-motive decision.

-12-

This does not avail Medlock on his ADEA claim, for which it is not the employer's burden to negate any possible contributory role played by age in the challenged adverse action but, conversely, the employee's burden to show that age was the "but for" cause of the action. *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009). Cortez's testimony does not establish a triable issue of age as the but-for cause here. His main point, that failure to admit fault was the only operative basis for his decision not to reinstate Medlock, obviously weighs against age even being a factor. His hypothetical qualification–that had Medlock admitted fault, something else might have led Cortez not to grant reinstatement–does not deny the causal operation of the stated justification on the actual facts, much less substitute age as the but-for cause to satisfy *Gross*. Cortez merely acknowledged that some other, unspecified consideration(s) could count against reinstating Medlock, so that Medlock's failure to admit fault, though the operative basis for denying reinstatement here, may not constitute a but-for cause for doing so. But that is immaterial under *Gross*: it is not UPS's burden to show that its justification was the but-for cause for its challenged action, i.e., that it *would have reinstated Medlock but for his failure to admit fault*; rather, Medlock must show that age was the but-for cause, i.e., that UPS *would have reinstated him, despite his failure to admit fault, but for his age*. Nothing Cortez said

supports the latter inference.[7]  Indeed, nothing he said affirmatively supports an inference that age played any role in his decision.

In sum, the comparison with Thompson does not create a triable issue of pretext–or, alternatively, in prima facie case terms, the comparison does not give rise to a reasonable inference of age discrimination, *see supra* note 5.  We turn next to the other Article 52 violaters who were reinstated.

## B.  The Other Comparators

One other driver, Tim Randolph, was reinstated by Matt Hoffman after an avoidable runaway accident.  Cortez was not involved in the termination or the reinstatement, but Hoffman's participation in the reinstatement arguably suffices for a comparison to Medlock.  But this comparison does not support Medlock's case, for the same reason the comparison to Thompson does not:  the reason given for reinstating Randolph was his admission of error, which clearly distinguishes

---

[7]     The *Gross* but-for standard does not apply to *Burk* tort claims.  Such claims are governed by a "significant factor" test, *Vasek v. Bd. of County Comm'rs*, 186 P.3d 928, 934 (Okla. 2008), imposing on the plaintiff "a more lenient standard than the 'but for' test," *Elzey v. Forrest*, 739 P.2d 999, 1001 (Okla. 1987); *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1059 (Okla. 1993).  Medlock argues in general terms that this disparity in standards should have prevented the district court from concluding that his failure of proof on the ADEA claim was fatal to his *Burk* tort claim as well.  He does not specifically refer in this regard to the testimony considered above, which would appear to at least implicate the basic thrust of his argument.  We will return to this point after considering the rest of the evidence offered on the issue of age discrimination, when we can engage in a fully informed assessment of the *Burk* tort claim.

his situation from Medlock's. *See* Aplt. App. at 146.[8] The record shows one other avoidable runaway accident resulting in the termination-and-reinstatement of a driver, Terrence Galloway, in 2003. *See id.* at 434-35. While Medlock refers in passing to this incident, he does not include it in his set of comparables, and for good reason: the incident occurred before Cortez became Division Manager in 2006 and Hoffman became District Labor Manager in July 2005, so neither of the decision-makers in Medlock's case were involved.

The rest of the comparables involve reckless accidents or failures to report accidents. Reinstatement was granted in the former cases based on the presence of external factors that negated or attenuated fault on the part of the driver, such as road and weather conditions, another motorist's excessive speed, and, in one instance, the union successfully argued that the driver had not been given proper

---

[8] The cited document is a chart of drivers terminated for Article 52 violations since June 27, 2004 (this predates the tenure of Cortez and Hoffman, so not all of the drivers are discussed in the parties' briefing). It recites infraction dates and descriptions, terminating supervisors, subsequent grievance decisions, reasons for the decisions, and the grievance decision-makers. It was attached as an exhibit to Matt Hoffman's affidavit, which recited that the "chart accurately represents the information contained therein." Aplt. App. at 139. Medlock objects that the chart lacks an adequate foundation. Its conclusory affirmation of accuracy, with no statement of the factual basis for the affirmation, much less a showing of personal knowledge of the facts, is problematic. But UPS relied on the chart in its summary judgment motion, *see, e.g.*, 26, 34, 39, and Medlock raised no objection in his response (and he has failed to provide a transcript of the hearing, in the event he objected then). Moreover, the chart summarizes information in UPS's answers to interrogatories, *see id.* at 421-30, which Medlock himself offered into evidence and relied on. Under the circumstances, we consider any objection to the chart waived.

training. *See* Aplt. App. 146-49. Such factors, not present in Medlock's case, present a legitimate basis for the reduction in discipline ultimately imposed on these drivers. In the failure-to-report category, drivers who had been terminated for non-traffic accidents were reinstated based on a lack of proof and, in one instance, the driver's claim that he had not been aware of the accident, *see id.* at 146-48. Such factors also were not present in Medlock's case. As alluded to earlier, UPS denied reinstatement to one driver, Dustin Prock, terminated for failure to report an accident, though a regional grievance committee later ordered his reinstatement. *See id.* at 149. We agree with UPS that this involuntary reinstatement does not support Medlock's case for pretext. *See Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 771 (7th Cir. 1994). On the contrary, the refusal to voluntarily reinstate the twenty-four year old Prock cuts against Medlock's claim that the decision to reinstate turned on an employee's age.

There is one unexplained reinstatement decision, made before Cortez had arrived but after Hoffman had been made District Labor Manager. Brad Popejoy was terminated for failing to report an accident in September 2005, but reinstated by a grievance settlement for which UPS had "insufficient data" to identify the basis for settlement and who made the decision. *See* Aplt. App. at 147. This one factual gap in the record hardly creates a triable issue of pretext as to the reasons given for the decisions in all other Article 52 cases, including Medlocks'. To state the obvious, *missing* evidence, by definition, cannot establish facts that the

evidence, if present, would have shown. The data insufficiency here demonstrates nothing more than *we cannot say* what the reasons were for reinstating Popejoy. To conclude somehow from this that Popejoy was reinstated for reasons that cast doubt on the justification for not reinstating Medlock would be sheer conjecture, which we have long recognized is an inadequate basis on which to oppose summary judgment, *see, e.g.*, *Hinds*, 523 F.3d at 1198 n.6 (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988)). And while a tell-tale pattern of tactically missing data could perhaps warrant skepticism as to a limited set of data offered by an employer in support of its position, we have no such pattern here.

## C. Other Evidence of Pretext

Medlock contends that three other facts bolster his case for a triable issue on pretext. Not one of these is material.

First, he notes that he had been repeatedly admonished about not working fast enough, and had found it necessary to file numerous grievances over working excessive hours in order to complete his route. There is no evidence that work speed played a role in Medlock's termination and non-reinstatement; Cortez specifically testified to the contrary. But, even if it had played a role, that would not support Medlock's discrimination claim. Work speed or productivity is a facially neutral and obviously relevant performance criterion for a delivery driver. Had Medlock presented persuasive evidence demonstrating that the reasons given

-17-

for terminating and not reinstating him were pretexts for getting rid of an unacceptably slow worker, that would not forestall summary judgment for UPS on his claims of age discrimination: "an employer would be entitled to judgment as a matter of law if the record [on pretext] conclusively revealed some other, nondiscriminatory reason for the employer's decision." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1172 (10th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). Medlock's suggestion that employer concern over sub-par work pace or productivity is a mask for age discrimination is untenable as a general inference and unsupported as a particular inference on our record.

Second, Medlock notes that the parking brake and clutch on his truck were adjusted shortly after it was put back in action following his accident, and its tires were replaced as well. While the extensive testing done immediately after the accident, which found the truck in working order, would seem more compelling, we agree that this additional evidence, particularly the brake and clutch work, would have lent some support to Medlock's position in the grievance proceedings that some mechanical failure must have been responsible for his runaway accident. Regrettably, as the undisputed evidence in our record shows, these subsequent repairs were not brought to the attention of the decision-makers in Medlock's case. For that same reason, of course, the fact of the repairs does not

undercut the validity of the decisions to terminate Medlock and deny his grievance seeking reinstatement.

Finally, Medlock points out that UPS opposed his application for unemployment benefits and that the agent engaged by UPS to represent it in the proceedings falsely stated that Medlock had left the scene of the accident, failed to report the accident, and had only been put on suspension or disciplinary leave. Needless to say, the agent's actions are disreputable and distressing. But there is no evidence tying those actions to the decision-makers involved in Medlock's termination and non-reinstatement. And UPS's opposition to Medlock's application for benefits on the ground of misconduct does not imply any hidden agenda, much less a specifically age-discriminatory agenda, behind the decisions made by Cortez and Hoffman. In their view, Medlock had committed a serious infraction by failing to follow prescribed procedures and then attempted to deny responsibility for his actions.

In sum, Medlock has not demonstrated a triable issue of pretext through comparison with other UPS employees or presentation of other circumstances sufficient to support a reasonable inference of age discrimination. As noted at the outset, however, he also insists that he offered direct evidence sufficient to make out a triable case of discrimination. We turn to that point next.

## IV. Direct Evidence of Age Discrimination

The direct evidence Medlock offered to show age bias consisted of a conversation with Brent Kashwer, his direct supervisor, in the parking lot of the UPS Tulsa Center within a week of his termination. Medlock's version of the conversation, which we must credit at the summary judgment stage even if Kashwer were to dispute it, included two exchanges that he contends reveal age bias. The conversation began with Kashwer telling Medlock that he "'need[ed] to speed up'" his work and adding, "'I don't know what we are going to do with you.'" Aplt. Opening Br. at 20 (quoting Aplt. App. at 403-04).[9] This initial part of the conversation is not direct evidence of discrimination. As we have already noted, management concerns over slow work pace are clearly legitimate and facially neutral and cannot simply be equated with age bias. Moreover, it is undisputed that work-pace concerns played no role in Medlock's case.

The latter part of the conversation, touching on the subject of retirement, is more intrinsically related to age. Kashwer asked Medlock, "'How long he would continue working for UPS.'" *Id.* (quoting Aplt. App. at 403). Tired of being harassed off the clock about UPS business, Medlock stated that he intended to work until he was 80, to which Kashwer replied "'No we can't have that.'" *Id.*

---

[9] The quotations above are from Medlock's interrogatory answer about the incident. His appellate brief also refers to an affidavit from a third-party witness that supports his account, though the affidavit is less specific in certain respects. *See* Aplt. Opening Br. at 20 (quoting Aplt. App. at 405).

(quoting Aplt. App. at 404). One such brief, and apparently facetious, exchange would be a slender reed indeed on which to send a case to trial for discrimination, even if the supervisor making the comment had been the decision-maker with respect to the action challenged as discriminatory. Here, it is undisputed that Kashwer exercised no authority as to either Medlock's termination or the denial of his reinstatement, nor is there any evidence that he attempted to indirectly determine the outcome in either case. "In order to rely on age related statements, [plaintiff] must show that they were made by a decision maker, and that there was a nexus between the discriminatory statements and the decision to terminate." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (following *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)).

In sum, Medlock failed to present material direct evidence of age bias. We are thus left with a record that does not support an inference of discrimination either directly or through undermining the legitimate and facially neutral reasons given for his termination and non-reinstatement. The district court therefore properly granted summary judgment for UPS on Medlock's ADEA claim.

## V. *Burk* Tort Claim

Medlock argues that the district court erred in summarily concluding that his *Burk* tort claim for age discrimination failed for the same reasons that his ADEA claim failed, because the two claims are governed by different causation

-21-

standards. We recognize the difference in legal standards, but conclude that it is not material to the disposition of this case.

While, as noted earlier, the "significant factor" test for the *Burk* tort claim does not require but-for causation, it imposes much more than some de minimus burden on the plaintiff. It "requir[es] a showing of more than a mere causal link," in that "a factor may be a cause without being significant." *Elzey v. Forrest*, 739 P.2d 999, 1001-02 (Okla. 1987). The plaintiff "must do more than show that [age] was only one of many possible factors resulting in his discharge." *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1059 (Okla. 1993); *see White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1419-20 (10th Cir. 1990) (holding trial court erred by instructing jury that employer would be liable under *Burk* if plaintiff showed improper motive was "a factor in the decision to discharge him," rather than a significant factor).

It is not necessary to set out our evaluation of the deficiencies in Medlock's evidence all over again here specifically with reference to the significant-factor test. What we have already said should adequately explain why, in our view, Medlock has failed to create a triable case that age played any role, much less a significant role, in the decisions to terminate his employment under Article 52 and subsequently to deny reinstatement in the grievance process.[10] In particular,

---

[10] *Burk* provides a tort remedy only for an employee's actual or constructive
(continued...)

the mere fact that Cortez left open the hypothetical possibility that Medlock could

have been denied reinstatement for some other reason even if he had admitted

fault for his runaway accident did not affirmatively support an inference that

age discrimination would have been an operative factor, much less a significant

one. To recognize this point is not to somehow improperly equate the but-for

---

[10](...continued)
*discharge. See, e.g.*, *Vasek v. Bd. of County Comm'rs*, 186 P.3d 928, 934 (Okla. 2008); *Mason v. State ex rel. Bd. of Regents of Univ. of Okla.*, 23 P.3d 964, 968 (Okla. Ct. App. 2000) (citing case law establishing that *Burk* "applies only to cases of wrongful *termination of employment*"). Thus, *Burk* tort claims have been dismissed when premised on other employment-related decisions, such as denial of promotion, *York v. AT&T Co.*, 95 F.3d 948, 959 (10th Cir. 1996), demotion/reassignment, *Davis v. Bd. of Regents for Okla. State. Univ.*, 25 P.3d 308, 310 (Okla. Ct. App. 2001), and failure to hire, *Williams v. Dub Ross Co.*, 895 P.2d 1344, 1346-47 (Okla. Ct. App. 1995); *Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 249 (10th Cir. 1993). It is quite possible that Medlock's claim, insofar as it relies on the refusal to reinstate distinct from the initial termination decision, is not even actionable under *Burk*. Given our disposition, however, we need not resolve that question.

Indeed, there may be a second threshold impediment to Medlock's *Burk* tort claim. Medlock was not terminable at will: Article 52 of the CBA provides that UPS must have "just cause" in order to fire an employee. Aplt. App. at 144. The Oklahoma cases uniformly cite as an element of the *Burk* tort that the plaintiff be an at-will employee. Earlier in the development of this area of the law, we predicted "that Oklahoma would permit a *Burk* action by an employee who could be fired only for 'just cause.'" *Davies v. Am. Airlines, Inc.*, 971 F.2d 463, 469 (10th Cir. 1992). But recent decisions by Oklahoma courts have strictly enforced the at-will requirement, rejecting claims by a classified employee under the Oklahoma Personnel Act who could not be fired absent just cause, *McCrady v. Okla. Dep't of Pub. Safety*, 122 P.3d 473, 475-76 (Okla. 2005), and by a police officer who could be fired only for cause, *Wilson v. City of Tulsa*, 91 P.3d 673, 681 (Okla. Ct. App. 2004). Again, given our disposition, we need not resolve this question.

standard applicable to Medlock's ADEA claim with the significant-factor test that governs the disposition of his *Burk* tort claim.

The judgment of the district court is AFFIRMED.