FILED
United States Court of Appeals
Tenth Circuit

November 5, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

HIPOLITO GERONIMO (JERRY)
PEREZ,

        Plaintiff-Appellant,

v.

ST. JOHN MEDICAL CENTER; THE
CARPENTERS LOCAL UNION #943,
TULSA, OKLAHOMA OF
ARKANSAS REGIONAL COUNCIL
OF UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF
AMERICA,

        Defendants-Appellees.

No. 09-5158
(D.C. No. 4:08-CV-00533-CVE-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **HOLMES**, Circuit Judges.

_____

        Mr. Perez sued his former employer, St. John Medical Center (St. John),

and the Carpenters Local Union #943 (Union), alleging wrongful termination and

_____

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

failure to rehire based on race and national origin discrimination. The district court granted summary judgment on all claims, and exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Mr. Perez is a Hispanic member of the Union, which he joined in 1975. In 2001, Mr. Perez was working on a major renovation project at St. John Medical Center. Although he started the project as an employee of a contract labor service called General Acoustics (GA), in February 2003 Mr. Perez was hired as a St. John employee by the hospital's director of renovations, David Hurst. Mr. Perez was designated a temporary "713 carpenter," a reference to St. John's budgetary cost code for temporary carpenters, but he was reassigned to a liaison position coordinating the project with hospital staff. At all times, though, his pay and job classification remained that of a 713 carpenter. During this period, the Union filed a grievance against Mr. Perez, alleging he failed to return a $125.00 check for attending a council meeting that he did not actually attend. The Union also alleged Mr. Perez left early from a union meeting without authorization.

In January 2007, construction at St. John neared completion, and Mr. Perez returned to his duties as a carpenter. But by mid-2007, Hurst received directions from a senior management official to reduce the number of 713 employees. To that end, Hurst solicited from individual supervisors the names of employees whom they wished to retain. At the time, Mr. Perez was working on a sixth-floor

renovation project under Cecil Allison, who did not wish to keep Mr. Perez and three other GA carpenters. Hence, Hurst laid-off Mr. Perez on August 16, 2007, indicating on his termination letter that he was laid-off due to a lack of work and was eligible for rehire.

Mr. Perez responded on March 7, 2008, by filing two separate charges of discrimination with the Equal Employment Opportunity Commission. In one charge he accused St. John of wrongful termination based on national origin discrimination; in the other he charged the Union and its officers with harassment and conspiring to violate his rights based on his national origin. He also accused Union officials of using racial slurs. Later, Mr. Perez complained of discrimination to St. John's director of internal audit, Andrea Eldridge, but reapplied for a job with the hospital. And when he was not rehired, he filed another discrimination charge alleging retaliatory failure to rehire.

Mr. Perez eventually brought his case to federal court, claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and 42 U.S.C. § 1981, among other things.[1] In particular, Mr. Perez charged St. John with wrongful termination and failure to rehire based on race and national origin discrimination, and the Union with contributing to his termination on account of

---

[1] Mr. Perez also advanced a claim under *Burk v. K-Mart Corp.*, 770 P.2d 24, 29 (Okla. 1989); state-law tort claims against the Union; and a Title VII retaliation claim against both defendants. None of these claims are the subject of this appeal. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

the same discriminatory animus. St. John and the Union moved for summary judgment, and the district court granted their motions on all claims.

Now Mr. Perez contends the district court erred. More specifically, he argues that (1) St. John's proffered reasons for terminating him were pretext for discrimination; (2) St. John's proffered reasons for failing to rehire him were pretext for discrimination; and (3) the Union's discriminatory acts culminated in his termination.

## II

We review the grant of summary judgment de novo, applying the same standard as the district court. *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." *Fischer v. Forestwood Co.*, 525 F.3d 972, 978 (10th Cir. 2008) (quotation omitted).

### A. *No Showing of Pretext for Wrongful Termination*

Mr. Perez first contends the district court erred in granting judgment to St. John on his wrongful termination claims brought under Title VII and § 1981.

He maintains that St. John's reasons for terminating him were pretext for discrimination and that the court improperly weighed the evidence against him.

Because Mr. Perez had no direct evidence of discrimination, the district court employed the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).[2]  To make out a prima facie case of discrimination resulting in wrongful discharge, Mr. Perez must show (1) membership in a protected class; (2) he was qualified for the position; (3) he was terminated despite his qualifications; and (4) he was terminated under circumstances which give rise to an inference of unlawful discrimination.  *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007).[3]  The district court observed that Mr. Perez satisfied the first three elements and

---

[2]

> Under *McDonnell Douglas*, a plaintiff may survive summary judgment by providing circumstantial rather than direct evidence of discrimination.  To do so, the plaintiff must first demonstrate a prima facie case of unlawful discrimination.  If she succeeds at this first stage, the burden of production then shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action.  Once the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual.

*Jones*, 617 F.3d at 1278 (citations omitted).

[3]     The elements under Title VII and § 1981 are the same.  *See Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).

apparently satisfied the fourth.[4]  But the court determined that St. John offered

legitimate, non-discriminatory reasons for his termination, and Mr. Perez failed to

show those reasons were pretext for discrimination.  We agree.

A plaintiff demonstrates pretext by showing "such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable factfinder

could rationally find them unworthy of credence and hence infer that the

employer did not act for the asserted non-discriminatory reasons." *Jones*,

617 F.3d at 1280 (quotation omitted).  Here, St. John claimed to dismiss

Mr. Perez because there was little work left to the renovation project and

Mr. Allison did not pick him for retention.  Mr. Perez points to four

circumstances which he claims prove these reasons were pretext for

discrimination.

First, he argues that Hurst revealed his true animosity by using or tolerating

racial slurs.  But Mr. Perez's testimony on this score was vague and conclusory.

*See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("Vague, conclusory

statements do not suffice to create a genuine issue of material fact." (quotation

---

[4]     The district court recited the standard formulation for a prima facie case, describing the fourth element as requiring that the job be retained after discharge. We have explained, however, that this element is "flexible" and "[t]he critical prima facie inquiry . . . is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Swackhammer*, 493 F.3d at 1166 n.8 (quotations omitted).

omitted)). Indeed, he stated that people used an epithet throughout his years of employment, but he could not identify anyone other than Hurst and the Union president, nor could he remember precise dates, context, or the first or last time he heard it. Instead, he could only estimate that the slur was used twenty times a year and eventually "tapered-off." Aplt. App. at 237. Although he alleged Hurst threatened to fire him if he complained, he could not recall when and seemingly guessed that the alleged threat was made during his first year of employment. Mr. Perez cites other discriminatory remarks, but one was made years before he was dismissed, without any apparent connection to the dismissal, and none were made by Hurst. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000). On the other hand, there was evidence that construction was near completion; that Hurst's decision to fire Mr. Perez was a function of Allison's recommendation; and that there were simultaneous layoffs for three GA carpenters, all from the sixth-floor project. And since Hurst originally hired Mr. Perez, there is a strong inference that St. John's proffered reasons were not pretextual. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 & n.4 (10th Cir. 2006).

Second, Mr. Perez points out that St. John hired a white 713 carpenter, Mike Pendleton, in March of 2007. Pendleton had been a carpenter for GA, had served as the Union's vice-president, and was hired to be Mr. Perez's supervisor under a budget allocation for an electrician. Mr. Perez contends that Pendleton

was to be his replacement once Hurst found an excuse to fire him, but this is mere conjecture. *See Swackhammer*, 493 F.3d at 1172 (conjecture is an insufficient basis for denying summary judgment). Pendleton was hired some five months *before* Mr. Perez was laid-off to replace another temporary carpenter who had quit.[5] Notwithstanding Mr. Perez's suspicions, there is no evidence that Pendleton was to be his replacement. Nor is there any evidence to support his suggestion that Pendleton's salary manifests pretext because it was allocated for an electrician.

Third, Mr. Perez insists he was being set-up for dismissal. His main argument concerns the Union grievance, referenced in his EEOC charge, which went before a Union tribunal and resulted in a $2,000 fine against him. When he refused to pay the fine, Hurst twice threatened to fire Mr. Perez if he failed to comply with the order. Mr. Perez asserts this exemplifies Hurst's discriminatory intent to replace him with Pendleton, but this, too, is mere conjecture. *See id.* Mr. Perez admitted during his deposition that he could only speculate why Hurst intervened in the dispute, guessing it was because of Hurst's "ties with the Union," Aplt. App. at 268, not some discriminatory animus. In fact, he later

---

[5] Contrary to Mr. Perez's contention, a fact-issue is not created by his mere allegation that Pendleton was hired as his replacement. *See* Reply Br. at 2. The record confirms that Pendleton was hired to replace a different 713 carpenter, Larry Faucet, who had resigned. Aplt. App. at 144, 158. Mr. Perez's conclusory allegations suggesting otherwise do not suffice to show pretext or raise a genuine question of material fact. *See Matthieson v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

acknowledged that Hurst had never even referenced Mr. Perez's race or national origin and was only upset because he did not want his name mentioned at the Union trial. *See id.* at 289-90.

Lastly, Mr. Perez contends it "made no economic sense" to fire him and retain more costly employees. Aplt. Br. at 25. We decline to second-guess St. John's business judgment. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1144 (10th Cir. 2009). Mr. Perez has not shown that St. John's legitimate, non-discriminatory reasons for terminating him were unworthy of credence and hence pretext for unlawful discrimination.

*B. No Showing of Pretext for Failure to Rehire*

Turning to Mr. Perez's failure-to-rehire claim, the district court again employed the *McDonnell Douglas* scheme and assumed Mr. Perez made a prima facie case for failure to rehire. *See Fischer*, 525 F.3d at 982-83 (setting forth elements). The court concluded, however, that St. John gave a legitimate, non-discriminatory explanation for failing to rehire Mr. Perez—it hired no 713 carpenters and had no need for new 713 carpenters after he was dismissed—and Mr. Perez did not show that these reasons were pretext for discrimination. On appeal, Mr. Perez insists he demonstrated pretext because there were available positions for which he could have been rehired but St. John filled those jobs with other workers.

Mr. Perez bears the burden of showing that he is similarly situated to the employees to whom he is comparing himself. *See Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000). And on this score, his argument fails. Indeed, he asserts that St. John briefly rehired GA carpenters, but he does not explain how these workers were similarly situated to him. Even more tenuous is Mr. Perez's assertion that he could have been rehired to fill a clerical vacancy. But Mr. Perez does not claim he was similarly situated to the person hired by St. John, nor does he claim to be qualified for the job, let alone better qualified than the individual who was hired, *see Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) ("[W]e are willing to infer pretext when the facts assure us that the plaintiff is better qualified than the other candidates for the position."). Under these circumstances, we have little difficulty concluding there was no triable issue of pretext regarding St. John's refusal to rehire Mr. Perez.

### C. Union Discrimination

Finally, Mr. Perez claims the Union's discriminatory actions culminated in his termination and violated Title VII. *See* 42 U.S.C. § 2000e-2(c)(3) ("It shall be an unlawful employment practice for a labor organization . . . to cause or attempt to cause an employer to discriminate against an individual[.]"). Once again, however, he fails to show a genuine issue of material fact, this time concerning the Union's efforts to have him fired. Hurst testified that he alone made the decision to layoff Mr. Perez, without any influence from the Union. Mr. Perez

questions Hurst's motivation, asserting Hurst favored the Union as evidenced by his alleged threats concerning the Union fine. But he cites no evidence showing that the Union encouraged or caused Hurst to terminate Mr. Perez on account of discriminatory animus.

Further, although Mr. Perez insists that Union President Wayne Eddings made racially offensive remarks, Eddings had no authority to terminate Mr. Perez, and there is no evidence that his remarks bore any relation to Mr. Perez's dismissal. *See Medlock v. United Parcel Serv.*, 608 F.3d 1185, 1197 (10th Cir. 2010) (recognizing that to rely on discriminatory statements, a plaintiff "must show that they were made by the decision maker, and that there was a nexus between the discriminatory statements and the decision to terminate" (quotations omitted)). Nor is there any evidence that Pendleton acted on a discriminatory basis to indirectly influence Hurst's decision. All we have is Mr. Perez's testimony that Pendleton threatened to go to Hurst if he slowed down on the job. While Mr. Perez speculated that Pendleton could tell Hurst whom to fire, he conceded that "Hurst does whatever he wants." Aplt. App. at 285. And in any event, the alleged threat was based on a non-discriminatory ground that would not forestall summary judgment. *See Medlock*, 608 F.3d at 1195-96. Given this

evidence, we conclude that Mr. Perez has failed to show a genuine issue of material fact concerning this or any other claim on appeal.[6]

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[6] Mr. Perez's conclusory allegations relating to conduct dating back to the 1970s does not alter our disposition.