FILED
United States Court of Appeals
Tenth Circuit

June 18, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHRISTOPHER F. FORD,

       Plaintiff-Appellant,

v.

MICHAEL B. DONLEY, Secretary of
the United States Department of the Air
Force,

       Defendant-Appellee.

Nos. 11-6203 & 11-6298
(D.C. No. 5:10-CV-00181-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **PORFILIO**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

Plaintiff Christopher F. Ford appeals from two adverse decisions entered by the district court in this suit over alleged employment discrimination at Tinker Air Force Base (TAFB). In Appeal No. 11-6203, Mr. Ford challenges the grant of summary judgment to his former employer, defendant Michael B. Donley, Secretary

---

[*]      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

of the Air Force, on his claims of race discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1]  In Appeal No. 11-6298, he challenges the district court's subsequent award of costs to the Secretary.  We affirm both decisions for the reasons explained below.

## I.  TITLE VII CASE (APPEAL NO. 11-6203)

Mr. Ford's Title VII claims concern (1) the denial of a promotion in 2008, which he contends was the result of (a) race discrimination and (b) retaliation for past complaints of discrimination; and (2) an allegedly hostile work environment he faced after challenging the lost promotion.  The district court entered summary judgment for the Secretary on the failure-to-promote claim, because Mr. Ford had not shown a triable issue that (a) the Secretary's explanation for the promotion decision was a pretext for discrimination or (b) there was a causal nexus between that decision and Mr. Ford's prior protected activity.  The district court entered summary judgment on

---

[1]  In his pleadings Mr. Ford summarily invoked other remedial provisions, i.e., 42 U.S.C. § 1981, the Oklahoma Anti-Discrimination Act, and the Rehabilitation Act of 1973.  Because he was a federal employee, however, Title VII is his exclusive remedy for race discrimination and retaliation, preempting § 1981, *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997), and state anti-discrimination law, *Mathis v. Henderson*, 243 F.3d 446, 447, 449 (8th Cir. 2001); *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998); *Mathirampuzha v. Potter*, 371 F. Supp.2d 159, 162 & n.1 (D. Conn. 2005) (collecting cases "uniformly h[o]ld[ing] that Title VII preempts state law employment discrimination claims brought by federal employees").  The district court did not separately apply the Rehabilitation Act to Mr. Ford's factual allegations, but Mr. Ford has not raised any objection in that regard or advanced any distinct argument under the Rehabilitation Act.  We therefore limit our review of this appeal to the Title VII principles under which the district court decided the case.

- 2 -

the hostile work environment claim because the circumstances cited by Mr. Ford were not pervasive or severe enough to support a triable case. We review these summary judgment rulings de novo. *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010).

## A. Denial of Promotion

Mr. Ford, who is African-American, worked as a sheet metal mechanic at TAFB. In November 2007, he applied for promotion to another sheet metal position in the "Boom Shop" at TAFB. Upon learning that the position had been awarded to a white TAFB worker, Mr. Ford filed an Equal Employment Opportunity (EEO) complaint claiming race discrimination and retaliation for prior EEO activity. The Secretary responded that the promotion decision had been based on an evaluative matrix, developed in conjunction with Human Resources, comparing job candidates' experience, appraisals, awards, and education, and that Mr. Ford had placed in the bottom half of the fourteen candidates. The complaint was resolved in favor of the Secretary. Mr. Ford filed this action for a de novo judicial determination of the matter. *See generally Timmons v. White*, 314 F.3d 1229, 1233 (10th Cir. 2003).

The district court held that the matrix provided a nondiscriminatory basis for the challenged personnel decision. In doing so, the district court rejected Mr. Ford's argument that the selecting official, Bobby Joe Burleson, had interjected a racial bias into the scoring process for the matrix. In particular, Mr. Ford challenged the score Mr. Burleson assigned for his "workload experience," insisting he was given credit

- 3 -

for only one year rather than the fifteen he had worked as a sheet metal mechanic. Citing the unopposed deposition testimony of Mr. Burleson and Kevin Yates, the district court explained that Mr. Ford's challenge was based on a misunderstanding of the matrix: his fifteen years as a sheet metal mechanic were counted in his score for "experience in this job series," while his "workload experience" points were properly limited to his one year doing the workload of a sheet metal mechanic in the shop where the job opening arose, here the Boom Shop. District Ct. Mem. Op. & Order entered July 27, 2011, at 9-10.

Mr. Ford argued that the deposition testimony of Mr. Yates was actually contrary to that of Mr. Burleson in this respect, but full consideration of the transcript belies this contention. There is one isolated exchange in Mr. Yates' testimony that might suggest Mr. Ford's interpretation, but the context supplied by previous and subsequent testimony makes it clear that Mr. Yates agreed with Mr. Burleson that "experience in job series" accounted for sheet metal work per se and that "workload experience" related only to work done with respect to a particular workload—here, that done by sheet metal mechanics in the Boom Shop. The isolated exchange was:

> Q      And so if you've been a sheet metal mechanic for a number of years, that would be what you would base someone's work load experience on if they were applying for a job in sheet metal mechanic?
>
> A      Uh-huh. Yes, ma'am.

Dep. of Kevin Yates at 45. This broad affirmation that workload experience would be "based on" sheet metal mechanic experience is accurate, *if* the latter involved the

- 4 -

relevant (Boom Shop) workload—as clarified by Mr. Yates' other testimony explaining that (1) use of years in a specific position (a "job series" like sheet metal mechanic) for purposes of workload experience *depends on the workload done in the position* and (2) years in a position per se are counted as experience in a job series. The first point is made here:

> Q   [S]o as far as the work load experience number that you put into the matrix system . . . – is that based on how many years that you have held a certain position such as a 3806 [i.e., sheet metal mechanic] position?
>
> A   Would it be used as – *no, it wouldn't be* a – *depending on what work load you're being interviewed on*.
>
> Q   And so what does that mean?
>
> A   A 3806 is just a series.
>
> Q   Okay.
>
> A   Now, we work in different jobs, I mean, different shops and everything, so, you know, how long you've been experienced as a sheet metal mechanic . . . – yeah, you can use that.
>
> . . . .
>
> Q   And so would the criteria be based on whether or not you're a sheet metal mechanic?  Does it matter what shop you're in or is it based on if you've been a sheet metal mechanic?
>
> A   It's based on if you hit the profile *for that particular shop*.

*Id*. at 44-46 (emphasis added).  The second point is made here:

> Q   And what does "experience in this job series" mean?
>
> A   In 3806?  In that job series?  Just experience in that job series.  I mean, you have different job series.  You have 3414's, you have 3416's,

which is machine metal mechanics, you have welders that have different job series and all of that.

Q     So that's when we're talking about the number?

A     Uh-huh.

Q     If you've been a 3806 for two years then . . . you would get that number of years for having held that specific series?

A     Uh-huh.

*Id.* at 45-46.

On appeal, Mr. Ford does not offer any additional argument on the matter. He simply states, contrary to the testimony quoted above, that "Mr. Yates said Mr. [F]ord should have been awarded for the number of years of experience as a whole not a job series as Mr. Burleson stated." Aplt. Opening Br. at 17. Nor has Mr. Ford raised a substantial challenge to the district court's additional holding that, even assuming some element of subjectivity in the matrix criteria, this alone would not suffice to demonstrate a triable issue of pretext. That is a correct statement of circuit law. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007); *Bauer v. Bailar*, 647 F.2d 1037, 1045-46 (10th Cir. 1981). We therefore affirm the district court's grant of summary judgment to the Secretary on Mr. Ford's claim that he was denied promotion as a result of race discrimination.

As for the retaliation aspect of the failure-to-promote claim, Mr. Ford relies on his earlier EEO activity, which concluded in 2005. We agree with the district court that the temporal relationship between this activity and the promotion decision was

far too remote to create a triable issue of retaliation, particularly in light of his failure to undermine the legitimate rationale offered by the Secretary for that decision, as explained above.[2]  *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008); *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208-09 (10th Cir. 2007).  We therefore affirm the grant of summary judgment to the Secretary in this respect as well.

## B.  Hostile Work Environment

Mr. Ford claimed that he was subjected to a hostile work environment after he challenged the promotion decision.  "Hostile work environment harassment occurs when unwelcome . . . conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment." *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1997) (internal quotation marks and brackets omitted).  For "harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (same).  This determination turns on "the totality of the circumstances, such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work

---

[2]     We also agree with the district court that the 2005 settlement of Mr. Ford's EEO complaint, which simply offered to extend Mr. Ford assistance in identifying areas for improvement to increase his opportunities for a supervisory position, did not entail any promises of future promotion.

performance; and the context in which the conduct occurred." *Id.* at 1413 ((internal quotation marks omitted).

The district court concluded that the incidents underlying Mr. Ford's hostile work environment claim, many of which involved personal conflict with a single coworker, were not severe or pervasive enough to support a triable case. A detailed recitation of the district court's discussion is not warranted here. The district court addressed the incidents Mr. Ford relied on, providing various reasons as to why they did not satisfy the applicable legal standards, and he has not raised a material challenge to any particular aspect of the district court's stated rationale.[3] Appellants bear the responsibility of "setting forth in their appellate brief their quarrel *with the district court's reasoning*." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998) (emphasis added). While we construe pro se litigants' materials liberally, we do not advocate on their behalf by constructing, and locating evidentiary support for, arguments they neglect to make. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005) (discussing *Hall v. Bellmon*,

---

[3] Mr. Ford does mention one specific point the district court did not address, i.e., that part of his hostile work environment involved placement in a separate work area, which he states lacked adequate climate control, sometime after he returned to work following a period of administrative leave and treatment for psychological and interpersonal problems. But this passing reference does not include any facts as to when or how long this occurred, or other details that would allow a meaningful comparative assessment of the work conditions involved. And the brief deposition testimony cited just states that it was uncommon to provide a separate work area and that this was done to accommodate Mr. Ford's inability to work around people. Dep. of Kevin Yates at 34-35. We see no basis here to disturb the district court's decision.

935 F.2d 1106, 1110 (10th Cir. 1991)).  We affirm the grant of summary judgment to the Secretary on Mr. Ford's hostile work environment claim.

## II.  AWARD OF COSTS TO SECRETARY (APPEAL NO. 11-6298)

Following the entry of summary judgment, the Secretary submitted to the clerk of the district court a bill of costs seeking a total of $714.98, including $454.03 to cover the cost of a court reporter for depositions of TAFB employees, $200 in fees for the deposition witnesses, $20 for docket fees, and $40.35 in copy costs ($32.25 for copies of the motion for summary judgment and $8.10 for copies of proposed jury instructions).  Bill of Costs filed Aug. 9, 2011.  Mr. Ford filed an objection to the bill of costs, which consisted of irrelevant complaints about the underlying case and one utterly conclusory objection apparently addressed to the cost request:  the Secretary "spent money [he] did not have to" in litigating the case.  Objection to Bill of Costs filed Oct. 6, 2011, at 1.  The clerk awarded costs, but in the drastically reduced amount of $52.25, covering only the docket fee and the copy costs relating to the summary judgment motion.  Mr. Ford filed a document seeking review of the award, attaching irrelevant materials relating to the merits of the underlying case and the inapposite objection he had earlier submitted to the clerk.  The district court noted the deficiency of Mr. Ford's materials and the fact that he offered "no argument or authority to challenge the costs award," but went on to review and approve the award.  Order filed Nov. 03, 2011.

We review an award of costs for an abuse of discretion, though we consider de novo issues relating to its statutory basis. *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1193 (10th Cir. 1998). The docket fee and copy costs awarded are statutorily authorized costs. *See* 28 U.S.C. § 1920 (4), (5). We see no abuse of discretion in the district court's approval of the award, which could legitimately have been much higher.

The judgment entered by the district court and its subsequent award of costs are AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge